UNITED STATES of America, Appellee,

v.

Walter SWIDERSKI and Maritza De Los Santos, Defendants-Appellants.

Nos. 633, 634, Dockets 76–1415, 76–1430.

United States Court of Appeals, Second Circuit.

Argued Jan. 5, 1977.

Decided Feb. 1, 1977.

**447**

Jonathan J. Silbermann, New York City, (William J. Gallagher, The Legal Aid Socie-ty, New York City of counsel), for defendant-appellant Swiderski.

Julius Wasserstein, Brooklyn, for defendant-appellant De Los Santos.

Marc Marmaro, Asst. U. S. Atty. (Robert B. Fiske, Jr., U. S. Atty., S.D.N.Y., Lawrence B. Pedowitz, Asst. U. S. Atty., New York City, of counsel), for appellee.

Before MANSFIELD, GURFEIN and MESKILL, Circuit Judges.

MANSFIELD, Circuit Judge:

■ This appeal raises a nice question that appears to be one of first impression: whether joint purchasers and possessors of a controlled substance, who intend to share it between themselves as users, may be found guilty of the felony of possession "with intent to distribute" as that phrase is used in Title 21 U.S.C. § 841(a)(1), as distinguished from simple possession in violation of § 844, which is a misdemeanor. We hold that they may not.

Appellants Walter Swiderski and Maritza De Los Santos were convicted of one count of possession with intent to distribute 21.5 grams (¾ ounce) of a substance containing 4.1 grams (⅐ ounce) of cocaine in violation of 21 U.S.C. § 841(a)(1) after a three-day trial before Judge Dudley B. Bonsal and a jury.[1] They were each sentenced to two-year terms of imprisonment, of which six months was to be served in a jail-type institution and the balance suspended, subject to three-year terms of probation and special parole to run concurrently following release from confinement. Appellants claim error in the district judge's jury instruction to the effect that an intent by joint possessors to share in the use of a controlled substance satisfies the language of 21 U.S.C. § 841(a)(1), which requires an "intent to distribute" the substance.

According to the version of facts most favorable to the government, one Martin Charles Davis, a government informant,

---

1. An earlier judgment of conviction against these defendants on the same charge was reversed by this court on the basis of the inadequacy of the district court's entrapment charge. *United States v. Swiderski*, 539 F.2d 854 (2d Cir. 1976).

who was an admitted user and dealer in narcotics, testified that in late 1973 Swiderski had given him a sample of THC, a hashish derivative. During the next year and one-half, according to Davis, he and Swiderski discussed dealing in narcotics on several occasions, but did not consummate any transaction because of Swiderski's unwillingness to do so in New York State.

On May 31, 1975, Swiderski sought to buy a quarter pound of cocaine from Davis. Two days later Davis told Swiderski that the cocaine transaction could be completed the next day.

On June 3, 1975, Swiderski and Maritza De Los Santos, then his fiancee and now his wife, picked up Davis at the Chelsea Hotel in New York City, showed him a large quantity of money, and took him to a studio apartment on West 48th Street, New York City, in a van driven by Swiderski. In the bedroom area of the apartment, Swiderski was given a package by Carlton Bush, the supplier whom Davis had located. Swiderski and De Los Santos both sampled or "snorted" some of the cocaine and tested the contents of the package. According to Davis, De Los Santos remarked that the quality of the cocaine was not good enough for their personal use, but that they had a buyer who would take it. Swiderski told Bush that they could do business in larger quantities if Bush could obtain higher quality cocaine at a better price. Swiderski then paid Bush $1,250, put the package of cocaine in his pants pocket, and with De Los Santos drove Davis back to the Chelsea.

Shortly afterward, Drug Enforcement Agents, who had been in contact with Davis and had been keeping Swiderski and De Los Santos under surveillance, pulled their cars in front of the van as it reached 34th Street and Eighth Avenue and arrested the appellants. A search incident to the arrest revealed that De Los Santos had the quantity of cocaine and $3,100 in cash in her purse and that Swiderski had $529 in his possession.

Testifying on their own behalf, the defendants claimed that they had not gone with Davis to the 48th Street apartment to purchase cocaine but only to get "high," that they paid over $1,250 out of fear in order to be allowed to leave the premises safely, that the money in their possession was to be used at the National Boutique Show to purchase goods for De Los Santos' store, the Isle of View Boutique, and that someone "slipped" the package of cocaine into De Los Santos handbag as they left the apartment at West 48th Street. On rebuttal, the government presented two witnesses from the National Boutique Show with whom Swiderski and De Los Santos claimed to have discussed purchases. Both witnesses denied having spoken to the defendants or having taken orders from them.

In summing up, the Assistant United States Attorney argued in substance that even if the defendants bought the cocaine with a view to sharing it between themselves as users, with each taking some of it for "snorts" or "blows," this proof would be sufficient to establish possession "with intent to distribute." The defense argued that the government had failed to prove such an intent. On this subject Judge Bonsal instructed the jury:

"You will recall that the statute speaks about possession with intent to distribute. What is possession? There are two types of possession: One is called actual possession and the other constructive possession. Actual possession means if you have something in your hand or something in your pocket or if you have something in your purse, or if you have something in your apartment. That would be actual possession. Constructive possession means you may not have the article in your hand, but you have control of it. You may have given it to somebody else for safekeeping, but you know where it is and you have control over the item.

"Now, turning to what 'possession with intent to distribute' means, well, intent to distribute merely means that you intend at some point or later time to pass on all or some of it; it means you intend to sell it; it means you intend to give it away; *you can intend to give it to a friend of yours or somebody who is close to you.* If you are going to pass it on, that is to

distribute under the statute." (Emphasis supplied.)

After approximately two hours of deliberation, interrupted by lunch and a request for exhibits, the jury sent a note to Judge Bonsal requesting, among other things, the "definition of intent to distribute" and seeking

"(c) Clarification of the following: If both defendants possess the drug (i. e., one paid for it and it was found in the other's handbag) can 'intent to distribute' mean giving the drug to the other or must third parties be involved?"

In response, Judge Bonsal repeated the substance of his charge on possession with intent to distribute, but now made it clear over defense objections that distribution could be satisfied solely by a transfer between Swiderski and De Los Santos:

"Well, intent to distribute merely means that you intend at some point at a later time to pass all or some of it on. It could mean a sale; it could mean that you could give it away. *You could give it to a friend of yours or even to your fiancee. If you are going to do that, that is a distribution.* (Emphasis added.)

The jury found both defendants guilty of the felony of possession of a controlled substance with intent to distribute, 21 U.S.C. § 841(a).

On this appeal Swiderski and De Los Santos claim that the district court's charge that passing of the drug between the two appellants could constitute a distribution under 21 U.S.C. § 841(a) was error.

### DISCUSSION

■ Title 21 U.S.C. § 841(a), which is part of the Comprehensive Drug Abuse Prevention and Control Act of 1970 ("the Act"), makes it unlawful to "possess with intent to . . . distribute . . . a controlled substance." Under 18 U.S.C. § 2 one who aids and abets such a felony is guilty as a principal. The Act, at 21 U.S.C.

§ 802(11), defines "distribute" as meaning "to deliver." Section 802(8) defines the term "deliver" or "delivery" as meaning "the actual, constructive, or attempted transfer of a controlled substance, whether or not there exists an agency relationship." The precise issue raised by the appellants is whether a statutory "transfer" may occur between two individuals in joint possession [2] of a controlled substance simultaneously acquired for their own use.

In order to interpret the foregoing words of the Act it is important to understand their place in the statutory drug enforcement scheme as a whole, which draws a sharp distinction between drug offenses of a commercial nature and illicit personal use of controlled substances. Under 21 U.S.C. § 848 an individual found guilty of engaging in a "continuing criminal enterprise," which means the participation as an organizer or supervisor with five or more other persons in a drug felony that is part of a continuing series of violations, faces a minimum sentence of 10 years imprisonment and a maximum sentence of life imprisonment, plus a fine of not more than $100,000. Section 841, which punishes the manufacture, distribution, or dispensation of controlled substances or the possession of such substances with intent to manufacture, distribute or dispense, provides for a maximum sentence of 15 years imprisonment, a fine of up to $25,000, or both, plus a special parole term of at least 3 years. In contrast, § 844(a) provides that one guilty of simple possession of a controlled substance without a prescription shall be punished by a sentence of imprisonment for not more than one year for a first offender, a fine of not more than $5,000 or both.

In thus distinguishing between (1) participation in a continuing criminal enterprise, (2) possession with intent to distribute, and (3) simple possession, Congress followed the philosophy of the "President's Advisory Committee on Narcotic and Drug Abuse,"

---

**2.** It is well established that possession of a controlled substance may be shared with others and that it may be established by evidence of actual, physical possession or on the basis of

the power to exercise control over the substance. *United States v. Davis,* 461 F.2d 1026 (3d Cir.1972).

("the Prettyman Commission"), established by President Kennedy in 1963, which proposed stringent measures against the evils of drug traffic and rehabilitation rather than retribution in the case of personal drug abuse. See 1970 U.S.Code Cong. & Ad.News 4575. Thus the House Report on the bill states that "Possession of controlled drugs is made a *misdemeanor, except where the possession is for the purpose of distribution to others." Id.* at 4570 (emphasis added). Another section of the report explains that the offense of possession means "possession for one's own use . . . the quantity of a drug found in the possession of a person, of course, bears upon the question of whether or not his possession is for his own use or is for the purpose of *illicit transactions involving others". Id.* at 4577 (emphasis added).

■ Congress' reasoning in providing more severe penalties for commercial trafficking in and distribution of narcotics was that such conduct tends to have the dangerous, unwanted effect of drawing additional participants into the web of drug abuse. For this reason the House Report equated "transactions involving others" and "distribution to others" with the harsher penalties provided by §§ 841 and 848. Where only individual possession and use is concerned, on the other hand, the Act prescribes lesser penalties and emphasizes rehabilitation of the drug abuser. Similarly, where two individuals simultaneously and jointly acquire possession of a drug for their own use, intending only to share it together, their only crime is personal drug abuse—simple joint possession, without any intent to distribute the drug further. Since both acquire possession from the outset and neither intends to distribute the drug to a third person, neither serves as a link in the chain of distribution. For purposes of the Act they must therefore be treated as possessors for personal use rather than for further distribution. Their simple joint possession does not pose any of the evils which Congress sought to deter and punish through the more severe penalties provided for those engaged in a "continuing criminal enterprise" or in drug distribution.

■ Of course, joint possession of a drug does not preclude a finding of possession with intent to distribute to a third person in violation of § 841(a). Whether such an inference may be drawn depends upon the surrounding circumstances, including the nature of the relationship (whether it is commercial rather than personal), the quantity of the drug (whether it is too large for personal use only), the number of people involved, and statements or conduct on the part of the defendants. See *United States v. Hutchinson,* 488 F.2d 484 (8th Cir.), *cert. denied,* 417 U.S. 915, 94 S.Ct. 2616, 41 L.Ed.2d 219 (1975) (large quantity of drug held jointly by husband and wife supplied inference of intent to distribute to others). But the mere existence of joint possession by two closely related persons—here an engaged couple who later married one another—is alone not enough to provide the basis for such an inference. Whatever else may be embraced within the term "transfer," a term that is not defined in the Act, we are persuaded that it was not intended to include the exchange of physical possession between two persons who jointly acquired and hold the drug for their own use.

The Ninth Circuit's per curiam decision in *United States v. Branch,* 483 F.2d 955 (9th Cir. 1973), upon which the government relies for the proposition that passing of narcotics between two individuals for their own personal use would constitute a distribution under § 841(a), is distinguishable in significant legal respects. There the information forming the basis for a felony search was that the defendant had handed over a small amount of marijuana to an informer for smoking purposes, which was held to constitute probable cause that a distribution under § 841(a) had taken place. With this we do not quarrel since, unlike the present case, there was no evidence that the informer-friend had jointly and simultaneously acquired possession of the drug at the outset. Since sole possession in *Branch* rested with the defendant, his transfer of the drug to a third person, friend or not, would violate § 841(a). Our holding here is limited to the passing of a drug between

joint possessors who simultaneously acquired possession at the outset for their own use.[3]

[■] In support of its argument that the sharing of drugs between two persons who simultaneously acquire joint possession with a view to using a drug in friendly "snorts" or "blows," satisfies § 841(a)'s requirement of "intent to distribute," the government directs our attention to § 802(8) which states that a delivery may occur "whether or not there exists an agency relationship" between transferor and transferee. If an agent may be guilty of violating § 841(a) on the basis of his delivering drugs to his principal, the argument goes, joint possessors who share drugs should likewise be guilty, since each acts as the other's agent in transferring physical possession of any of the drug to the other. This contention, however, runs counter to Congress' intent, which was to distinguish between one who acts as a link in the chain of distribution and one who has already acquired possession for his own use.

The agent who delivers to his principal performs a service in increasing the distribution of narcotics. Without the agent's services the principal might never come into possession of the drug. Purchasers who simultaneously acquire a drug jointly for their own purpose, however, do not perform any service as links in the chain; they are the ultimate users. Moreover, the history of the "agency" clause militates against the government's interpretation. The clause was intended by Congress simply to insure elimination of the so-called "procuring agent defense" that had existed under the drug laws as they stood prior to the Act. Under the earlier laws, which prescribed stiff penalties for individuals involved in any *sale* of drugs, a defendant could escape liability as a buyer of narcotics by showing

that he had purchased the drug as an agent acting upon instructions of his principal. *United States v. Sawyer,* 210 F.2d 169, 170 (3d Cir.1954); *United States v. Winfield,* 341 F.2d 70, 71 (2d Cir.1965).

The language of § 802(8) eliminated the "procuring agent" defense, *United States v. Masullo,* 489 F.2d 217, 221 (2d Cir.1973), by substituting the concept of "distribution" in place of the operative concept of a "sale," a result consistent with Congress' intent to penalize severely individuals engaged in procuring drugs for others, while providing less serious penalties for those involved in personal drug abuse. Thus, under current law, the agent who delivers drugs to a principal is liable as a distributor under 21 U.S.C. § 841, while his principal, who receives the drug for personal use, is subject to a charge of simple possession under 21 U.S.C. § 844, unless it is proven directly or by inference that the user intends further to distribute the substance. We must reject the government's suggestion at oral argument that in such a case the principal would nevertheless be liable as an aider and abettor of the agent's distribution to him, since this would totally undermine the statutory scheme. Its effect would be to write out of the Act the offense of simple possession, since under such a theory every drug abuser would be liable for aiding and abetting the distribution which led to his own possession.

[■] Applying these principles here, there was some evidence from which the jury might have inferred that appellants intended to transfer some or all of the narcotics purchased by them to a third person—notably Davis' testimony concerning De Los Santos' statement that the cocaine was not good enough for the personal use of Swiderski and herself but that they had a buyer for it, and Swiderski's statement that

---

**3.** Neither can the government's position be supported by the language at 21 U.S.C. § 841(b)(4) excluding from that section "any person who violates subsection (a) . . . by distributing a small amount of marihuana for no remuneration" and prescribing instead the offense of simple possession under 21 U.S.C. § 844. By its terms, the provision miti-

gates the punishment of individuals proven to have distributed marijuana. Since the defendants claim that they did not "intend to distribute" within the meaning of the Act, the provision provides no aid in interpreting Congress' intent with regard to the scope of a distribution under the Act.

**452**

Swiderski and De Los Santos would be willing to transact sales in greater quantities with Bush. However, the judge's repeated instruction to the effect that an intent to distribute could be inferred from the mere giving of the drug "to a friend of yours or even to your fiancee" was error, which cannot be labelled harmless, since the jury's request indicated that its verdict might well turn on whether the passing of some or all of the drugs between the two appellants would constitute a distribution in violation of the Act. Furthermore, the Assistant United States Attorney had argued in summation that such a passing would suffice.

In view of the existence of some evidence from which a jury might infer an intent on appellants' part to distribute the cocaine to third parties in violation of § 841(a), we would normally remand this case for a new trial. However, the case has already been tried twice and the requests made by the jury at the second trial indicate that they were not persuaded to draw such an inference. Furthermore, the government has suggested that if we disagreed with the trial judge's instruction on intent to distribute the appropriate remedy would not be a reversal but a vacation of the sentences imposed and a remand with directions to the district court to amend the judgment to reflect a conviction for simple possession and to resentence the defendants.

Since the jury necessarily found all of the elements of simple possession in violation of 21 U.S.C. § 844 and rejected all of the appellants' defenses, and since we are convinced that the defendants will not be prejudiced thereby, we remand for the entry of judgment accordingly and for resentencing on this lesser-included offense. 28 U.S.C. § 2106; *Tinder v. United States,* 345 U.S. 565, 73 S.Ct. 911, 97 L.Ed. 1250 (1953); *Austin v. United States,* 127 U.S.App.D.C. 180, 382 F.2d 129, 142 (1967); *United States v. Ciongoli,* 358 F.2d 439 (3d Cir.1966).