**Arland FRISS, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

No. 92–CV–1530.

United States District Court, N.D. New York.

July 28, 1993.

Cheryl J. Sturm, West Chester, PA, for petitioner.

Office of U.S. Atty., David R. Homer, Asst. U.S. Atty., Albany, NY, for respondent.

## MEMORANDUM–DECISION and ORDER

McAVOY, Chief Judge.

### I. Procedural History

Petitioner Arland Friss (hereinafter "Petitioner") was found guilty of conspiracy to possess with intent to distribute cocaine and "crack" (Count I) and conspiracy to possess cocaine and "crack" (count II), in violation of 21 U.S.C. § 846. In accordance with Section 5K2.0 of the United States Sentencing Guidelines, this court departed downward from the guideline imprisonment range of 51–63 months and sentenced Petitioner to concurrent terms of imprisonment of 24 months on count I and 12 months on Count II, and a three year term of supervised release.

Petitioner filed a Notice of Appeal from his conviction, and Respondent United States (hereinafter "Respondent") filed a Notice of Appeal from this court's downward departure. Petitioner then filed a motion in the Second Circuit Court of Appeals for release pending resolution of these appeals, but this motion was denied. Accordingly, Petitioner commenced service of his sentence on August 28, 1991.

Thereafter, Petitioner and Respondent entered into a stipulation dismissing both appeals. Petitioner now seeks to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255 by alleging that his Sixth Amendment rights have been violated. Specifically, he alleges that his counsel, Joseph F. Donnelly, was acting under a conflict of interest, and in the alternative, that his counsel was ineffective at trial.

### II. Discussion

Petitioner failed to raise his Sixth Amendment claim on direct appeal. According to *Campino v. United States,* 968 F.2d 187 (2d Cir.1992), where a defendant fails to raise a constitutional claim on direct appeal, the claim is barred from collateral review on a motion pursuant to 28 U.S.C. § 2255 unless the petitioner can demonstrate "cause" for the default of normal appellate procedure, and actual "prejudice" from the alleged violation upon which the claim is based. Under the "cause and prejudice" test, " '[c]ause' ... must be something *external* to the petitioner, something that cannot fairly be attributed to him ...," *Jorge v. U.S.,* 818 F.Supp. 55, 56 (S.D.N.Y.1993), *citing Coleman v. Thompson,* —— U.S. ——, ——, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991), (emphasis in original), and the "prejudice" must be so substantial that it undermines the integrity of the entire trial.' " *Id.* at 55, (citing) *U.S. v. Frady,* 456 U.S. 152, 169, 102 S.Ct. 1584, 1595, 71 L.Ed.2d 816 (1982). This standard has been extended to claims alleging ineffective assistance of counsel in § 2255 proceedings. *See Id.; Castillo v. U.S.,* No. 92 CIV. 3982, 1993 WL 51181 (S.D.N.Y. Feb. 23, 1993).

### (a) Actual Conflict of Interest

Petitioner claims that he failed to raise the issue of an actual conflict of interest on direct appeal because he was unaware of the circumstances giving rise to the alleged conflict, and because he was represented by the same counsel at those proceedings who he now claims was ineffective. Respondent agrees that it would be unreasonable to expect an attorney to raise the issue of his own ineffectiveness, and therefore concedes that Petitioner has established sufficient cause for failure to raise that issue on direct appeal. Therefore, the issue of whether Petitioner

has demonstrated "cause" for not raising the issue of his counsel's alleged conflict on appeal is not contested.

■ The question of whether Petitioner has demonstrated "prejudice" is contested by Respondent and is therefore the controlling issue as to his first claim. With respect to an alleged conflict of interest, the Supreme Court has held that "prejudice" will be presumed if the petitioner demonstrates that counsel actively represented conflicting interests and that "an ACTUAL conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980) (emphasis added). Therefore, if Petitioner can demonstrate an actual conflict of interest, he will have satisfied his burden of showing prejudice.

The basis for Petitioner's claim of actual conflict is as follows: Petitioner is a retired Hudson, New York police officer who at the time of retirement held the position of Detective Sergeant. In the course of his duties as an officer, Petitioner had occasion to investigate and arrest one Joseph Melino and members of Mr. Melino's family for various illegal acts. Petitioner arrested Melino's wife and was subsequently sued by the Melino family. According to Petitioner's memorandum, however, that suit was eventually dismissed. Petitioner was the arresting officer in a case against Melino's daughter and Petitioner was present when a fellow officer arrested Melino himself.

Subsequent to these arrests, Melino retained a private investigation firm to determine why he was the target of what he believed to be police harassment, and what information had been learned about him and his family (Petitioner's memorandum; reports of private investigator attached as Exhibit A). Petitioner contends that this investigation firm was also hired to collect derogatory information concerning certain members of the Hudson Police Department, including the Petitioner. Although Respondent disputes this allegation (Respondent's memorandum at pg. 8), the reports of the private investigator indicate that Melino did in fact request such derogatory information. (Peti-

tioner's memorandum; Exhibits A–4 and A–119).

The reports of the private investigator indicate that Melino also retained attorney Joseph F. Donnelly to counsel him in defense of criminal allegations which were unrelated to the instant case. Petitioner contends that Donnelly played a "central role" in the investigation of the Hudson Police Department and that he personally coordinated the private investigation of Petitioner (Petitioner's memorandum at pg. 7).

Petitioner maintains that there was an "actual conflict" of interest because his attorney had previously counseled Melino and allegedly investigated Petitioner. Petitioner argues that Melino choreographed a "frame" designed to take revenge upon Petitioner through the use of a "sting" operation. The alleged goal of this operation was to undermine Petitioner's credibility and associate him with drugs and prostitutes. (Petitioner's reply at p. 4). Petitioner contends that Donnelly labored under an actual conflict because he assisted Melino in carrying out the "frame" which allegedly led to his conviction.

Petitioner maintains that it was not until after the direct appeal was withdrawn that he learned of Donnelly's alleged role as an investigator in the "frame". When he initially hired Donnelly as counsel, Petitioner told Donnelly of his suspicions that Melino had started the allegations giving rise to the charges against him. (Petitioner's Declaration; Exhibit B). Petitioner admits that Donnelly advised him of the previous representation of Melino; and that Donnelly explained that his prior representation of Melino would pose no conflict as the cases were unrelated. (*id.*).

Petitioner argues that the only way to win the case against him was for his attorney to identify the "choreographer" of the frame, and to demonstrate the relationship which allegedly existed between the "choreographer" and the witnesses at trial. Petitioner maintains that Donnelly intentionally failed to conduct such an investigation because his "conflict of interest" would be exposed. This, Petitioner argues, demonstrates that there was a conflict of interest. However, the court finds this argument rather circular

because it assumes, without proving, the existence of an actual conflict of interest.

Assuming arguendo that the facts alleged by the Petitioner are true, Petitioner has not established that Donnelly acted under an "actual conflict of interest". According to the Lawyer's Code of Professional Responsibility (DR 5–108), for a conflict of interest to exist in a present client-former client situation, the interests of the parties represented must be materially adverse to one another. While Petitioner may have demonstrated that at one time Melino sought to uncover derogatory information concerning Petitioner and other members of his department, this alone does not demonstrate that Petitioner's interests were "materially adverse" to those of Melino's. First, Petitioner has failed to demonstrate any connection between Melino's alleged investigation of the Hudson Police Department and Respondent's prosecution of him. Moreover, even if Petitioner could demonstrate that Melino instituted a "frame" against him, the fact that Donnelly previously represented Melino does not indicate the existence of an "actual" conflict. Donnelly's prior representation of Melino poses none of the "dangers" which are often inherent in a conflict of interest situation.

In *Glasser v. U.S.*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), *reh'g denied*, 315 U.S. 827, 62 S.Ct. 629, 86 L.Ed. 1222 (1942), the Supreme Court reversed the conviction of a defendant on the basis of an actual conflict of interest where the record indicated that defense counsel, who was representing two co-defendants, failed to cross-examine a prosecution witness whose testimony linked one of the defendants with the crime, and failed to resist the presentation of arguably inadmissible evidence. The Court found that both omissions resulted from counsel's desire to diminish the jury's perception of the co-defendant's guilt. Consequently, the Court found that the evidence of counsel's struggle to serve two masters warranted reversal.

*Glasser* is distinguishable from the instant case in that Donnelly was not serving two masters. Melino was not a co-defendant of Petitioner's, he was not testifying at trial, and he (Melino) was not acting for the prosecution in the case against Petitioner. In addition, there is no indication that Donnelly continued to represent Melino during his representation of Petitioner. Even if Melino did try to discredit Petitioner, and even if the court assumes that Donnelly did in fact investigate Petitioner on Melino's behalf, this would not deter Donnelly from providing anything less than zealous representation to Petitioner. Petitioner argues that Donnelly intentionally failed to conduct the necessary investigation in order to avoid uncovering the conflict of interest which existed. However, Petitioner cannot demonstrate that his interests were adverse to those of Melino's, and therefore that there was a conflict of interest to uncover. Consequently, no conflict of interest has been shown, and therefore prejudice will not be presumed.

Although Petitioner has made various allegations of wrongdoing, "allegations of wrongdoing alone cannot rise to the level of an actual conflict unless the charges have some foundation." *U.S. v. Jones*, 900 F.2d 512, 519 (2d Cir.1990), *cert. denied*, 498 U.S. 846, 111 S.Ct. 131, 112 L.Ed.2d 99 (1990) (the mere *possibility* for conflict is not enough; the defendant must identify conduct which constitutes an actual conflict of interest). Petitioner's allegations lack this requisite foundation; and he has therefore failed to demonstrate "prejudice" as required by *Campino*.

### (b) Ineffective Assistance of Counsel

In the alternative, Petitioner argues that if the court finds that there was no "actual" conflict of interest, Donnelly's representation was nevertheless so substandard that it should be deemed "ineffective". In support of this argument, Petitioner alleges five separate deficiencies in his counsel's performance at trial. Here again, however, Petitioner must show both "cause" and "prejudice" for failing to raise the issue on appeal. *Campino* at 190. Petitioner has not met this burden.

■ Petitioner has not argued that the factual or legal basis for this second claim was unavailable on his direct appeal. On the contrary, the errors which Petitioner alleges as the basis of his ineffective assistance of

counsel claim were known immediately after they occurred at trial. Accordingly, Petitioner had the opportunity to appeal the issue of his counsel's ineffectiveness based on the alleged trial errors, yet, failed to raise that issue on appeal.[1] Consequently, his second claim should be procedurally barred because Petitioner failed to demonstrate "cause". *cf. Campino*, 968 F.2d at 190 (no "cause" will be demonstrated where a petitioner knew of the claim at the time of the appeal). On this basis alone, Petitioner's second claim should be dismissed. However, in the alternative, Petitioner failed to demonstrate that he suffered prejudice.

■ A petitioner claiming ineffective assistance of counsel based on counsel's inadequate performance at trial bears a heavier burden than one who bases such a claim on his attorney's conflict of interest. *See Strouse v. Leonardo*, 928 F.2d 548, 556 (2d Cir.1991). A petitioner who claims ineffective assistance of counsel based on his attorney's performance must establish both that his attorney's performance was objectively unreasonable, and that but for the deficient performance the result of the trial probably would have been different. *See Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), *reh'g. denied*, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984); *U.S. v. Javino*, 960 F.2d 1137, 1145 (2d Cir.), *cert. denied*, — U.S. ——, 113 S.Ct. 477, 121 L.Ed.2d 383 (1992). In applying this standard, "judicial scrutiny of counsel's performance must be highly deferential" and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

■ Petitioner points to several aspects of his attorney's performance that were allegedly objectively unreasonable. First, he alleges that Donnelly conducted no independent investigation of the facts notwithstanding his promise to do so. Petitioner argues that his defense required an investigation to uncover the alleged frame and the "corruption" of the "large number of key witnesses" at trial who had an identifiable connection to Melino. (Petitioner's memorandum at p. 8). Petitioner maintains that Donnelly's failure to conduct such an investigation affected the outcome of his case.

The flaw in Petitioner's argument is his failure to demonstrate the alleged connection between the "large number" of witnesses and Melino. Petitioner has offered virtually no evidence to support the contention that the witnesses were connected to Melino. Of the fifteen witnesses who testified on behalf of the Government, Petitioner has not demonstrated any connection between thirteen of them and Melino. The claimed connection to a fourteenth witness is belied by the record in this case, (see Trial Transcript at 326; testimony of Stephen Puckett which indicates that, contrary to Petitioner's contentions, he was not employed by Melino); and the connection to the fifteenth is simply that she lived in a building owned by Melino (Petitioner's memorandum at p. 8). Therefore, Petitioner has not demonstrated any connection between the witnesses and Melino which Donnelly failed to uncover.

In addition, it appears that Donnelly did in fact conduct an independent investigation of the facts. Donnelly was aware of the fact that many of the witnesses who testified for the Government had prior criminal records and/or drug histories. From the trial tran-

---

1. Although Respondent has not raised this defense, the court has the power to raise this issue *sua sponte*. For example, in *Hines v. U.S.*, 971 F.2d 506 (10th Cir.1992), the court stated:

> The district court's ability to raise a defense to a § 2255 motion sua sponte is consistent with the authority that the Rules Governing Section 2255 Proceedings in the United States District Courts give to the district courts. Specifically, Rule 4(b) provides: 'If it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that

> the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified.' This rule empowers the court to dismiss meritless petitions on its own without requiring any action on the part of the government.

971 F.2d at 509; *see also Washington v. James*, 996 F.2d 1442 (2d Cir.1993) ("the federal courts have the authority to raise the procedural default defense sua sponte. We are unaware of any circuit that has taken a contrary view") (citations omitted).

script it is clear that Donnelly adequately cross-examined those witnesses at trial in an effort to undermine their credibility. *See, e.g.* Trial Transcript at 227 (Simmons); at 395 (A. Rocke); at 696–702 (V. Rocke); at 200 (Morrison); at 696–702 (Praga); at 133–164 (Kritzman); at 668 (Jablanski); and at 53 (Egan). Thus, Petitioner's claim that his attorney conducted no independent investigation is contradicted by the record of the trial.

■ The second alleged error is Donnelly's failure to request a *"Swiderski"* instruction. In *United States v. Swiderski,* 548 F.2d 445 (2d Cir.1977), the Second Circuit held that joint purchasers and possessors of a controlled substance, who intend to share the substance between themselves as users, may not be found guilty of possession with "intent to distribute", but only of the misdemeanor charge of simple possession. The Court held that the Government must prove the defendant's intent to distribute to someone other than one of the initial purchasers.

Petitioner contends that Donnelly was familiar with this law and that the facts justified such an instruction. Here again, however, Petitioner offers no evidence to support this contention. In any event, even if it is to be assumed that Donnelly was in fact familiar with this law, the failure to request a *Swiderski* instruction was not objectively unreasonable and would not have resulted in a different outcome at trial.

*Swiderski* is distinguishable from the instant case in that it applies to circumstances in which co-conspirators jointly and simultaneously acquire drugs. In the instant case, however, the record indicates that there were several instances where quantities of crack and cocaine were distributed by Petitioner and other co-conspirators to individuals who did not participate in the acquisition of the drugs. *See, e.g.* Trial Transcript at 173–176 (Witness William Morrison testified that when he went to the apartment of witness Kritzman, Petitioner and the others were

already in possession of crack which they then shared with him), Trial Transcript at 384 (Andrea Rocke testified that on one occasion Petitioner shared his cocaine with her); and Trial Transcript at 274–279 (Linda Briggs testified that on one occasion she went to Kritzman's apartment where she was given crack by Petitioner and Kritzman). Thus, even if a *Swiderski* instruction had been given, the Government satisfied its burden of proving intent to distribute.[2]

■ The third alleged error concerns Donnelly's summation at trial. Petitioner claims that "no rational defense counsel would close with allegations which are unsupported by the record and thereby open the door for a devastating rebuttal summation". (Petitioner's memorandum at p. 9). This allegation, however, can summarily be disposed of because even if the allegation is true, and assuming arguendo that Donnelly did close with allegations which were unsupported by the record, it is not probable that the result at trial would have been different. The jury was instructed that statements of counsel are not evidence and that it is the jury's recollection of the evidence which controls (Trial Transcript at 859); therefore, the second prong of the *Strickland* standard is not satisfied.

■ The fourth alleged trial error fails the second prong of *Strickland* as well. Petitioner asserts that "no rational defense counsel would stand by as the prosecutor characterizes the defendant as a professional witness." (Petitioner's memorandum at p. 10). This phrase was used in the prosecutor's closing argument on a single occasion and Donnelly's failure to object does not constitute "ineffective assistance" under *Strickland.* As just mentioned, the jury was properly instructed as to the status of counsel's statements. Moreover, even if Donnelly did object to the characterization, in light of the overwhelming evidence aligned against Petitioner at trial, it is not probable that the result at trial would

---

**2.** In addition, as set forth in the definitions contained in 21 U.S.C. §§ 802(11) and 802(8), and as stated in 21 U.S.C. § 841(a)(1), proof of "distribution" does not require proof that the distribution was done in exchange for anything of value or for profit or in any particular manner or form. The jury in this case was so instructed. Trial Transcript at 874–875. *See also U.S. v. Young,* 822 F.2d 1234, 1241 (2d Cir.1987) (supplying cocaine to "guests" infers participation in a "distribution").

155

have been different. *See U.S. v. Rodriguez,* 968 F.2d 130, 142 (2d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 139, 121 L.Ed.2d 92 (1992) (citing *Floyd v. Meachum,* 907 F.2d 347, 348 (2d Cir.1990)) (it is a rare case in which improper comments in a prosecutor's summation are so prejudicial that a new trial is required).

 Finally, as his fifth assertion of error Petitioner maintains that "no rational defense counsel would advise the defendant to withdraw his direct appeal in exchange for no consideration." (Petitioner's memorandum at p. 10). This contention is clearly incorrect. The Respondent filed a notice of appeal from the court's decision to grant Petitioner's motion for a downward departure from the sentencing guidelines. If Petitioner's motion had not been granted, Petitioner faced a sentence of up to 63 months in prison. Petitioner was only sentenced to 24 months. Therefore, if Respondent succeeded on appeal, Petitioner potentially could have received a sentence more than twice as long as he was sentenced to serve.

Moreover, as Respondent notes, Petitioner had no significant issue from which to appeal his conviction. The trial of his case focused almost exclusively upon the credibility of the witnesses. Although the issue of witness credibility is appealable, where there are conflicts in the testimony, which there were in this case, the court "must defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses." *U.S. v. LeRoy,* 687 F.2d 610, 616 (2d Cir.1982), *cert. denied,* 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983). Under these circumstances, attorney Donnelly's advice to Petitioner to withdraw his appeal in exchange for a withdrawal of the appeal by Respondent was reasonable as it was in return for consideration. Therefore, as to this assertion of error, the first prong of the *Strickland* standard is not satisfied.

### III. Conclusion

For these reasons, the contention by Petitioner that his Sixth Amendment rights have been violated is without foundation. Petitioner has demonstrated "cause" as to his conflict of interest claim, but he has failed to demonstrate the existence of an actual conflict, and therefore prejudice. Petitioner has failed to demonstrate "cause" for his failure to raise the instant ineffective assistance of counsel claim; and alternatively, he has failed to demonstrate prejudice from the alleged trial errors. Therefore, it is hereby

ORDERED, that Petitioner's motion pursuant to 28 U.S.C. § 2255 is denied in its entirety.