9 F.3d 1549
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff/Appellee,
v.
Timothy FAYNE, Defendant/Appellant.
 No. 92-4042.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 6, 1993.
Decided Nov. 15, 1993.
 
 Before MANION and ILANA DIAMOND ROVNER, Circuit Judges, and PELL, Senior Circuit Judge.
 
 ORDER
 
 1
 Timothy Fayne appeals the district court's denial of his motion for a new trial. In this motion, Fayne claimed that he was entitled to a new trial because the court had erroneously refused to instruct the jury that the offense of distributing cocaine, see it, see 21 U.S.C. § 844. Because a rational jury could not have acquitted Fayne of distributing cocaine and found him guilty of possessing it, the district court properly refused to give the instruction. We therefore affirm the district court's denial of Fayne's motion for a new trial.
 
 I. BACKGROUND
 
 2
 A jury convicted Fayne, an employee of the United States Postal Service, of one count of distributing approximately .71 grams of crack cocaine on December 5, 1991, one count of distributing approximately 1.27 grams of cocaine on January 16, 1992, both in violation of 21 U.S.C. § 841(a)(1), and of one count of possessing approximately .26 grams of cocaine on January 16, 1992, in violation of 21 U.S.C. § 844. As might be expected, the jury heard conflicting versions of the events that led to Fayne's arrest. The government's principal witnesses were Arthurine Jones, Al Correia, and Michael Barrientos, the United States Postal Inspectors who were involved in the investigation of Fayne's activities. Their testimony relates the following story:
 
 
 3
 The investigation of Fayne derived from the investigation of another postal worker named John Davis. Jones and Correia began investigating Davis after receiving information that he was selling drugs. Correia and Jones, in their undercover roles as husband and wife, arranged a meeting with Davis at his apartment on December 5, 1991. On that day, Correia dropped off Jones and Clara Blanchard, a cooperating individual, at Davis's apartment building. Correia pulled his car into a nearby parking lot and waited. As the two women waited for Davis in the vestibule of the apartment building, Fayne and Brian Green, another postal worker, walked in. The women asked the two men whether they knew Davis. Fayne replied that he did, and that Davis was in his (Fayne's) apartment. Fayne allowed the two women to wait in the vestibule while he and Green went upstairs to fetch Davis. After a few minutes, Fayne came back downstairs and told the women that Davis was busy. After Blanchard told him that she and Jones had come a long way and that Davis was expecting them, Fayne took them upstairs to his apartment. Green, Davis, and Fayne's brother were seated at a table, smoking crack cocaine. Fayne joined them.
 
 
 4
 After she and Blanchard had been in Fayne's apartment for about thirty minutes, Jones approached Davis and told them that she wanted to get "something." Davis accepted $30 from Jones to buy her some crack cocaine. Davis and Fayne also agreed to buy $100 worth of crack for Jones's "husband" (actually Postal Inspector Al Correia in his undercover role). Jones, Blanchard, Davis, and Fayne then left the apartment and met Correia, who was waiting in his car. Fayne and Davis gave Correia directions to the location where they planned to purchase the cocaine. On the way there, Fayne asked Correia what "he wanted to do," and Correia handed him $100 for some crack cocaine. Correia stopped the car near Kenmore and Ardmore Streets in Chicago. Fayne and Davis entered a building and returned to the car five minutes later. Jones saw Davis hand Blanchard a package containing crack cocaine and Fayne hand Correia four clear plastic bags containing .71 grams of crack cocaine.
 
 
 5
 On January 16, 1992, Jones telephoned Fayne at Fayne's work assignment at the Uptown Postal Station in Chicago and discussed the possibility of purchasing some cocaine from him. Fayne agreed to sell her cocaine, and the two arranged to meet that evening in the parking lot of a gasoline station next to the apartment building in which Fayne lived. Jones met with Fayne as planned, and the two discussed the amount and kind of cocaine that Jones wanted. Jones wanted crack cocaine, but because Fayne told her that obtaining crack cocaine would take awhile, she settled on powdered cocaine. Fayne got into Jones's car and directed her to drive to the 1400 block of Bryn Mawr Avenue in Chicago. Once there, Jones told Fayne that she would give him $100 for a sixteenth ounce of cocaine. Fayne requested some of the cocaine that Jones was purchasing for herself, and Jones suggested that Fayne instead take $20 for arranging the transaction. Fayne liked that idea, commenting that he would take the $20 and use it to purchase a larger amount of cocaine for himself. Fayne left the car and returned five minutes later with 1.27 grams of powdered cocaine. He showed Jones an envelope containing .26 grams of powdered cocaine that he said was for his personal use. Shortly thereafter, Jones gave a prearranged signal to her surveillance team, and Fayne was arrested. Following his arrest, Fayne admitted to Postal Inspector Michael Barrientos that he had sold four $20 packets of crack cocaine on December 5, 1991, and that he had purchased cocaine for Jones on January 16, 1992.
 
 
 6
 Fayne was charged by indictment with one count of distributing the crack cocaine that he procured for Jones and Correia on December 5, 1991, transaction; one count of distributing the cocaine that he purchased for Jones on January 16, 1992, and one count of possessing the cocaine that was found on his person following his arrest. At the close of the government's case, Fayne moved for acquittal pursuant to Federal Rule of Criminal Procedure 29(a)[1], and the court denied the motion.
 
 
 7
 Fayne testified on his own behalf and related the following story: He and Green met Jones and Blanchard in the vestibule of his apartment building on December 5, 1991, and took them up to his apartment to wait for Davis. He left his apartment with Davis, Jones, and Blanchard, but intended to go to buy a pack of cigarettes at the gasoline station next door. On the way downstairs he discussed with Jones the possibility of dating her in the future. Jones told him that she, Blanchard, and Davis were going for a drive to get some cocaine to "party with" at the apartment. Fayne got into the car with the group only after Jones and Blanchard insisted that he do so. Once in the car, he introduced himself to Correia, but did not converse with him. When the car arrived at Kenmore and Ardmore Streets, Correia handed Davis $100. Fayne waited in the lobby of the building while Davis went upstairs to purchase the cocaine. When they returned to the car, Davis, not Fayne, handed the packages of cocaine to Correia. The group then drove back to the apartment building. Fayne returned to his apartment and shortly thereafter was joined by Davis, who had two packages of cocaine that Davis claimed Correia had given him. The two men smoked the cocaine.
 
 
 8
 On January 16, 1992, Fayne received a call at work from Jones, and the two agreed to meet at the gasoline station next door to his apartment building. The two discussed purchasing a sixteenth of an ounce of cocaine, which Fayne believed would be enough for them to party with back at his apartment. Jones asked him if he wanted some compensation for arranging the deal. He took $20 from Jones, which he intended to combine with $30 of his own money to buy a larger amount of cocaine to party with. Following his arrest, he did not admit to Inspector Barrientos that he had purchased $100 worth of cocaine for Correia on December 5, 1991, or that he purchased cocaine for Jones on January 16, 1992.
 
 
 9
 At the close of the evidence, Fayne renewed his motion for acquittal, and the court again denied the motion. At the jury instruction conference, Fayne proffered a pattern, lesser-included-offense instruction for possession.[2] The government objected to the instruction, arguing that possession is not necessarily included in the offense of distribution, and that the evidence presented could not support a finding by the jury that Fayne possessed but did not distribute cocaine on either December 5, 1991, or January 16, 1992. The district court agreed with the government, and denied Fayne's proffered instruction.
 
 
 10
 The jury returned a verdict of guilty on all three counts. Fayne subsequently moved the court for acquittal pursuant to Federal Rule of Criminal Procedure 29(c)[3], and for a new trial pursuant to Federal Rule of Criminal Procedure 33.[4] After allowing the government time to respond, the court denied both motions, finding that Fayne had failed to establish that a rational jury could have found him guilty of possession and acquitted him of distribution, and that the elements of possession are identical to part of the elements of distribution. Fayne was sentenced to a term of incarceration of twenty-seven months on Counts One and Two (the counts alleging distribution), and a term of incarceration of six months on Count Three (the count alleging possession), all terms to be served concurrently. He also was sentenced to a term of three years of supervised release. Fayne timely filed his notice of appeal.
 
 II. DISCUSSION
 
 11
 The sole issue in this appeal is whether the district court committed reversible error by refusing to instruct the jury that distributing cocaine includes the lesser offense of possessing it. Fayne contends that he was entitled to have a lesser-included-offense instruction submitted to the jury because possession is an element of distribution, and the evidence adduced at trial would have allowed a rational jury to acquit him of distributing cocaine on December 5, 1991, and January 16, 1992, and convict him of the lesser offense of possessing cocaine on both of those dates. We review de novo the district court's refusal to give the lesser-included-offense instruction and will reverse only if Fayne was prejudiced by the refusal. See Hamling v. United States, 418 U.S. 87, 134-35 (1974); United States v. Grier, 866 F.2d 908, 932 (7th Cir.1989).
 
 
 12
 Fayne submits that he was entitled to a lesser-included-offense instruction based on Federal Rule of Criminal Procedure 31(c), which provides in relevant part: "The defendant may be found guilty of an offense necessarily included in the offense charged." A lesser offense is not "necessarily included in the offense charged" unless: (1) the elements of the lesser offense are a subset of the elements of the offense charged, Schmuck v. United States, 489 U.S. 705, 716 (1989); and (2) the evidence adduced at trial would allow a rational jury to find the defendant guilty of the lesser offense and acquit him of the greater. Keeble v. United States, 412 U.S. 205, 208 (1973); Sansone v. United States, 380 U.S. 343, 349 (1965). Therefore, the district court in this case was required to give the lesser-included-offense instruction only if: (1) the elements of the offense of possession are a subset of the elements of the offense of distribution; and (2) a rational jury could have found Fayne guilty of possessing cocaine on December 5, 1991, and on January 16, 1992, and acquitted him of distributing cocaine on those two dates. Fayne's inability to satisfy the second requirement is dispositive.
 
 
 13
 Fayne submits that a rational jury could conclude that he possessed, but did not distribute, cocaine on December 5, 1991. At trial, Postal Inspector Jones testified that Davis accepted $30 from her for crack cocaine, and that Davis and Fayne agreed to purchase an additional $100 worth of crack cocaine for Jones's "husband" (actually undercover Postal Inspector Al Correia). Both Jones and Correia testified that as they drove to the location where they were to purchase the crack cocaine, Correia handed Fayne $100, and that after they had arrived at the building where they were to pick up the crack cocaine Fayne went inside, returned minutes later, and handed the crack to Correia. By contrast, Fayne testified that he was merely present and had nothing to do with the purchase of the cocaine. According to Fayne it was Davis who brought the crack cocaine to the car and handed it to Correia. Fayne admitted, however, that when he and Davis returned to his apartment the two of them smoked crack cocaine that Correia had given to Davis.
 
 
 14
 A rational jury could not find Fayne guilty of possession and not guilty of distribution based on this evidence. Fayne's defense was purely exculpatory. Therefore, in order to convict him of simple possession without also finding that he distributed the crack cocaine, the jury would have had to concoct a theory of the case that no party presented to it. Fayne submits that he presented a theory of simple possession to the jury in that he testified that he smoked (and therefore possessed) cocaine with Davis upon their return from fetching the cocaine for Correia. He argues that a rational jury could conclude that Davis handled the delivery of the cocaine to Correia and that the only role that he (Fayne) played was to smoke some crack cocaine with Davis after Correia left. While this argument has facial appeal, it ignores the crucial fact that Fayne was not charged with distributing the cocaine that he and Davis smoked, but only the cocaine that was obtained for Correia. The cocaine that Davis and Fayne smoked could not have been the same cocaine that was obtained for Correia, because the government produced for trial all the cocaine that Correia had paid for. Therefore, Fayne never represented to the jury that he merely possessed the cocaine that he was ultimately convicted of distributing (Correia's crack cocaine); he only represented that he possessed crack cocaine that he was not charged with distributing. The jury had no basis for finding that Fayne only possessed Correia's cocaine but did not deliver it to Correia.
 
 
 15
 Fayne also submits that a rational jury could conclude that he possessed but did not distribute powdered cocaine on January 16, 1992, if it were to believe his testimony that he purchased the cocaine for Jones and himself to share back at his place. Fayne thus assumes that a person does not "distribute" drugs within the meaning of 21 U.S.C. § 841(a)(1), if he intends only to share the drugs with a companion. United States v. Swiderski, 548 F.2d 445 (2d Cir.1977), would appear to support this position. There the court held that two defendants who jointly acquired possession of a small amount of cocaine, intending only to share it together were guilty of possessing cocaine under 21 U.S.C. § 844, but not distributing it under 21 U.S.C. § 821(a)(1). Id. at 450. Nevertheless, the court acknowledged that joint possession does not preclude a finding of distribution. It noted that whether such an inference may be drawn depends upon the surrounding circumstances such as the quantity of the drug, the nature of the relationship between the parties involved, and the conduct or statements made by the parties. Id. Fayne asserts that the amount of cocaine involved here (1.27 grams) suggests that he bought the cocaine for his and Jones's personal use (i.e. possession) and not for distribution.
 
 
 16
 But two factors suggest that Fayne was guilty of distributing cocaine. First, as Fayne conceded at trial, he was aware when he bought the cocaine for Jones that Jones planned to take at least some of it home with her. And second, Fayne bought separate bags of cocaine for Jones and himself: 1.27 grams for Jones, which he purchased with Jones's $100; and a smaller amount for himself, which he purchased with his own $30 and $20 that Jones gave him for his services. Thus Jones and Fayne did not jointly possess any cocaine as the two defendants in Swiderski (an engaged couple) did.
 
 
 17
 Fayne conceded at trial that he knew Jones was going to take at least some of her cocaine home with her. He also admitted taking $120 from Jones, buying her $100 worth of cocaine, adding $20 to his own $30, and buying cocaine for himself. This testimony is consistent with Jones's testimony. In order to convict Fayne of simple possession without also finding that he distributed cocaine, the jury would have had to disbelieve both the government's witnesses and Fayne himself. Therefore, we believe that a rational jury could not conclude that Fayne possessed, but did not distribute, cocaine on January 16, 1992.
 
 III. CONCLUSION
 
 18
 For the foregoing reasons, Fayne's conviction is AFFIRMED.
 
 
 
 [1]
 Rule 29(a) states in pertinent part: "The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses
 
 
 [2]
 The pattern jury instruction reads as follows:
 The crime of distribution of a controlled substance with which defendant is charged in [counts one and two of] the indictment includes the lesser offense of possession of a controlled substance.
 If you find the defendant not guilty of the crime of distribution of a controlled substance charged in the indictment, or if you cannot unanimously agree that the defendant is guilty of that crime, then you must proceed to determine whether the defendant is guilty or not guilty of the lesser offense of possession of a controlled substance.
 Committee on Fed.Crim.Jury Instructions of the Seventh Circuit, I Federal Crim.Jury Instructions of the Seventh Circuit 2.03 (1980).
 
 
 [3]
 Rule 29(c) states in pertinent part: "If the jury returns a verdict of guilty ..., a motion for judgment of acquittal may be made or renewed within 7 days after the jury is discharged or within such further time as the court may fix during the 7-day period.... [T]he court may on such motion set aside the verdict and enter judgment of acquittal."
 
 
 [4]
 Rule 33 states in pertinent part: "The court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice.... A motion for a new trial based on any ... grounds [other than newly discovered evidence] shall be made within 7 days after verdict or finding of guilty or within such further time as the court may fix during the 7-day period."