UNITED STATES of America

v.

Christopher MARTEL, William Reid, Aaron McNeel, and Alicia Gouzie, Defendants

Nos. CRIM.03–81–P–H, CRIM.03–93–P–H, CRIM.04–15–P–H, CRIM.03–63–P–H.

United States District Court, D. Maine.

April 1, 2004.

Darcie N. McElwee, AUSA, Office Of The U.S. Attorney, Portland, ME, for United States of America.

Thomas Dyhrberg, South Portland, ME, for Christopher Martel.

Neale A. Duffett, Cloutier, Barrett, Cloutier & Conley, Portland, ME, for William Reid.

Bruce M. Merrill, Portland, ME, for Aaron McNeel.

Gail LaTouf, Westbrook, ME, for Alicia Gouzie.

## MEMORANDUM DECISION ON DISPUTED GUIDELINE SENTENCING ISSUE

HORNBY, District Judge.

The issue is whether four defendants who had an agreement to steal firearms and trade them for cocaine knew or had reason to believe that the firearms "would be used or possessed in connection with another felony offense." If they did, their sentences must be enhanced under United States Sentencing Guideline section

2K2.1(b)(5). I conclude that they did know or have reason to know.

These four defendants pleaded guilty to or were found guilty of possessing or conspiring to possess stolen firearms in violation of 18 U.S.C. § 922(j). A fifth defendant who was convicted, a juvenile, has already been sentenced by Judge Singal. One of the defendants, Alicia Gouzie, was tried before and will be sentenced by Judge Carter. However, the defendants have agreed to a consolidated resolution of this sentencing issue, which is common to all four remaining defendants. In addition, Defendant Aaron McNeel and his lawyer have agreed that I may rule on this issue despite the fact that the Presentence Report in his case has not yet been filed.

On January 20, 2004, I held a conference of counsel with the lawyers. In a Procedural Order issued that day, I defined the scope of the issue: "whether in possessing the firearms [the four defendants] had reason to believe that they would be used in connection with the furnishing of cocaine." At a consolidated evidentiary hearing on March 17, 2004, the Government introduced the trial testimony of two of the defendants, Alicia Gouzie and Christopher Martel, in support of the enhancement. The defendants' lawyers challenged the weight of the Government's evidence, and submitted one exhibit: a letter from the Government to the Probation Office, with corrections and objections to Gouzie's Presentence Report. Following the hearing, each of the parties filed a written memorandum.

In this case, the evidence or information available to me consists of the transcripts of Christopher Martel's and Alicia Gouzie's trial testimony and a letter from the Government correcting and objecting to certain portions of Alicia Gouzie's Presentence Report.[1] In finding the facts in a sentencing proceeding, I am not bound by the rules of evidence, but may rely only upon evidence or information that "has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3; *United States v. Rodriguez*, 336 F.3d 67, 71 (1st Cir.2003). Applying this standard, I find that the four defendants knew or had reason to believe that the stolen guns would be used in connection with the felony offense of possession of cocaine with intent to distribute.

### FACTS

The four defendants are Christopher Martel, William Reid, Aaron McNeel, and Alicia Gouzie. On December 19, 2002, the four defendants, a juvenile, and a sixth individual, Nicole Gagnon, were sitting around a table in Gagnon's apartment drinking and playing cards. Someone brought up the subject of drugs. Everyone at the table expressed an interest in obtaining drugs, but nobody had any money. Reid said that he knew where they could get drugs if they had something to trade. McNeel said that his parents owned guns. Everyone at the table agreed that they should steal the guns and trade them for drugs. Martel, Reid, McNeel, Gouzie and the juvenile drove, in two cars, to McNeel's parents' house. Gagnon stayed behind at the apartment. Gouzie and the juvenile drove around while Martel, Reid, and McNeel went into the house and stole McNeel's parents' gun

---

1. The Probation Office has prepared presentence reports for each of the defendants, except Aaron McNeel. The facts set forth in those reports do not materially contradict Martel's and Gouzie's trial testimony. Because McNeel's presentence report has not yet been filed, however, I choose to rely on the trial testimony and not the presentence reports.

safe. Everyone then returned to Gagnon's apartment.

Once back at the apartment, the four defendants and the juvenile broke into the safe and removed six guns. Reid called a drug dealer and made arrangements to exchange the guns for cocaine. Martel, Reid, and McNeel then left Gagnon's apartment and drove to the drug dealer's house. When they arrived, Reid went into the house alone; Martel and McNeel drove around the block, waiting for Reid. Reid traded four of the guns for two bags of cocaine. When he rejoined Martel and McNeel, Reid handed one of the bags to McNeel and kept one for himself. Reid, McNeel, and Martel then returned to Gagnon's apartment, where they shared the drugs with Gouzie, Gagnon, and the juvenile. All six individuals used cocaine.

## DISCUSSION

United States Sentencing Guideline section 2K2.1(b)(5) provides for a four-level enhancement if the defendant "possessed or transferred any firearm or ammunition with the knowledge, intent, or reason to believe it would be used or possessed in connection with another felony offense." Two of the defendants, Alicia Gouzie and William Reid, were charged with conspiring to possess stolen firearms, not actual possession. Section 2K2.1(b)(5) nonetheless applies by virtue of section 2X1.1(a). That section provides that, in the case of conspiracy, the proper base offense level and any adjustments should be based on the guideline for the substantive offense.[2]

■ The Government has advanced several grounds for applying the enhancement. At the hearing, the Government argued that other firearm-related offenses might serve as the predicate offense. Application Note 18 of the Guidelines, however, forecloses this argument. It provides that " 'another felony offense' . . . refer[s] to offenses other than explosives or firearms possession or trafficking offense." Thus, other gun-related felonies may not serve as predicate offenses under section 2K2.1(b)(5). *See United States v. Lloyd,* 361 F.3d 197, 201 (3d Cir.2004) (" '[F]irearms possession or trafficking offenses' are categorically removed from the set of crimes that may constitute 'another felony offense.' ").

The Government primarily argues that the four defendants knew or had reason to know that the firearms would be used in connection with the furnishing or distribution of cocaine. Cocaine distribution is "another felony offense" under § 2K2.1(b)(5). The defendants' lawyers argue that there was no other felony offense because there was no distribution on December 19, 2002. They say that the four defendants, Gagnon, and the juvenile jointly possessed the cocaine only for their own use. They rely on *United v. Swiderski,* 548 F.2d 445 (2d Cir.1977). In *Swiderski,* the defendants, an engaged couple, jointly purchased cocaine for their own use. The Second Circuit reversed their conviction of possession with intent to distribute. That court held that "where two individuals simultaneously and jointly acquire possession of a drug for their own use, intending only to share it together, their only crime is personal drug abuse— simple joint possession, without any intent to distribute the drug further." *Id.* at 450. The First Circuit has not adopted *Swiderski,* but has noted that its holding "appears fully justified on the facts of that case." *United States v. Rush,* 738 F.2d 497, 514

---

2. William Reid is being sentenced under the 2002 Guidelines, not the 2003 Guidelines. The Guideline sections relevant to this sentencing issue did not change between 2002 and 2003.

(1st Cir.1984). The question, then, is whether the *Swiderski* exception applies to the facts of this case.

*Swiderski*'s exception for joint acquisition for personal use does not apply if the "joint" venture possessed cocaine to furnish to someone else. At the sentencing hearing, the Government introduced portions of the trial testimony of Alicia Gouzie and Christopher Martel as evidence that the group furnished cocaine to Nicole Gagnon and Frank Maddox, who, the Government argues, were outside any "joint possession" group. After reviewing the testimony, I find it not sufficiently reliable to warrant a conclusion that Nicole Gagnon was outside any "joint" venture. The scheme to steal the guns and exchange them for cocaine was hatched in Gagnon's presence in her apartment. Although she did not go to McNeel's parents' house to steal the guns, there is ample evidence that she was a part of the agreement to do so. If there was a "joint" venture concerning drugs, she was part of it. (It is irrelevant that the Government did not charge Gagnon for her role in the gun-stealing conspiracy.) Although Frank Maddox was not a part of the "joint" venture, the testimony concerning his use of cocaine is scant and unreliable. Only Gouzie testified that Maddox used cocaine. She also offered conflicting testimony about Maddox's drinking, testifying both that Maddox "had been drunk" and that he "wasn't drinking."[3] In contrast, Martel testified that he did not see Maddox use any drugs. There simply is no reliable evidence that cocaine was furnished outside the group.

■ The *Swiderski* exception, however, is not as broad as the defendants would like. It does not apply to every joint venture or conspiracy to acquire and use drugs. The holding in *Swiderski* is limited to "the passing of a drug between joint possessors who *simultaneously* acquired possession *at the outset* for their own use." 548 F.2d at 450–51 (emphases added). Courts applying *Swiderski* have held that it applies only in cases where all of the drug users were present when the drugs were acquired. *United States v. Washington,* 41 F.3d 917, 920 (4th Cir.1994); *United States v. Wright,* 593 F.2d 105, 108–09 (9th Cir.1979). Thus, where one or more individuals purchase or acquire drugs and then share the drugs with others, there is a distribution, notwithstanding the existence of a conspiracy or agreement among all of the parties involved to acquire and use drugs. *Washington,* 41 F.3d at 920 ("[A] defendant who purchases a drug and shares it with a friend has 'distributed' the drug even though the purchase was part of a joint venture to use drugs."); *Wright,* 593 F.2d at 108 (holding that *Swiderski* does not apply because "[Defendant] facilitated the transfer of the narcotic; he did not simply 'simultaneously and jointly acquire possession of a drug for their (his and another's) own use.' "). *See also United States v. Rush,* 738 F.2d 497, 514 (1st Cir.1984) (The *Swiderski* court "made it unmistakably clear that its holding was limited to the passing of a drug between joint possessors who simultaneously acquired possession at the outset for their own use.")(internal quotation omitted).

In this case, the four defendants did not acquire possession of the cocaine simultaneously. Only three of the defendants left Gagnon's apartment to get the drugs; only one of these, Reid, went inside the drug dealer's apartment to get the cocaine. At that point Reid possessed with intent to

---

**3.** The Government is also seeking an obstruction of justice enhancement for Gouzie on the ground that she perjured herself at trial.

distribute. When McNeel obtained a bag from Reid for the use of the group, he too possessed with intent to distribute, as did Martel (by virtue of joint possession). Gouzie was part of a conspiracy to possess with intent to distribute, having participated in the agreement by which the three males went to the drug dealer to exchange the guns for drugs. So by the time the three returned to the apartment and distributed to Gouzie, Gagnon, and the juvenile, all four defendants had possessed or conspired to possess with intent to distribute.

■ Of course, the stolen firearms were used "in connection" with this other felony; after all, they were the tender used to purchase the drugs that were later distributed. I conclude that when Martel, McNeel, and Reid left the apartment to trade the guns for cocaine, each of the four defendants either knew or had reason to believe that the firearms were going to be used "in connection with" the felony of possession with intent to distribute.[4] Accordingly, section 2K2.1(b)(5) applies.[5]

Finally, at the hearing and in their memoranda, some of the defendants' lawyers argued that, notwithstanding the fact that these defendants were charged with firearm crimes, the conspiracy was really a conspiracy to obtain and use drugs and that the defendants should be sentenced accordingly. (Under the drug guidelines, the defendants would fare better since they would not face the 2K2.1(b)(5) enhancement.) However, this is not a case where the defendants simply possessed guns and traded them for cocaine. The guns at issue in this case were *stolen*. It is entirely appropriate, therefore, that the defendants be sentenced under the guidelines for stolen firearms and that their sentences be enhanced for using the stolen firearms in connection with another felony, the drug offense.

## CONCLUSION

Christopher Martel, William Reid, Aaron McNeel, and Alicia Gouzie knew or had reason to believe that the stolen firearms would be used in connection with the felony offense of possession with intent to distribute. Section 2K2.1(b)(5) therefore applies and four levels will be added to each defendant's sentence.

So Ordered.

4. There has been some suggestion that defendant McNeel believed that the guns were going to be sold first and drugs were going to be purchased with the proceeds. Even if this is the case, he had reason to believe that the firearms would be used "in connection with" the felony of possession with intent to distribute because without the sale of the stolen firearms, the drug purchase and distribution would not have been possible.

5. I note that the drug dealer's distribution to Reid might also serve as the predicate offense in this case. People who trade firearms in exchange for drug distribution surely know or have reason to know that the firearms are being used in connection with felony distribu-tion. *See Smith v. United States*, 508 U.S. 223, 228, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993). Application of section 2K2.1(b)(5) is not limited to other offenses committed by the defendant being sentenced; it also applies in cases where the defendant knew or had reason to believe that the recipient of the firearms planned to use them in connection with another felony. *E.g., United States v. Cofske*, 157 F.3d 1, 2 (1st Cir.1998). *But see United States v. Garnett*, 243 F.3d 824 (4th Cir.2001) (considering only whether the defendant who traded guns for drugs used the guns in connection with felony possession, and not whether there was a felony distribution to the defendant).