**UNITED STATES, Appellee,**

v.

**Carlos M. TUERO, Specialist Five, U.S. Army, Appellant.**

No. 55,905.

CM 448285.

U.S. Court of Military Appeals.

May 9, 1988.

For Appellant: *Captain Donna L. Wilkins* (argued); *Colonel Brooks B. La*

*Grua, Lieutenant Colonel Paul J. Luedtke,* and *Captain Kathleen A. VanderBoom* (on brief).

For Appellee: *Captain Bryant G. Snee* (argued); *Colonel Norman G. Cooper, Lieutenant Colonel Gary F. Roberson, Captain Karen L. Taylor,* and *Captain Denise K. Vowell* (on brief).

*Opinion of the Court*

SULLIVAN, Judge:

Appellant was tried by a general court-martial at Fort Dix, New Jersey, on October 4, 1985. Pursuant to his pleas, he was found guilty of conspiracy on two occasions to wrongfully introduce cocaine onto a military installation and wrongful distribution of cocaine during the spring of 1984, in violation of Articles 81 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 934, respectively. The military judge sentenced him to a bad-conduct discharge, confinement for 9 months, forfeiture of $400 pay per month for 9 months, and reduction to the lowest enlisted grade. The convening authority approved the sentence on January 30, 1986, but the unserved portion of confinement was remitted on April 28, 1986. The Court of Military Review affirmed the findings of guilty and the sentence on July 29, 1986, in a short-form opinion.

This Court granted review of the following issue:

WHETHER THE MILITARY JUDGE ERRED BY NOT DISMISSING THE OFFENSE OF WRONGFUL DISTRIBUTION OF COCAINE (SPECIFICATION OF CHARGE II).

We find no error and affirm.

The record contains the following stipulation of fact:

In February 1984, the accused went to Lima, Peru, on leave to visit his grandmother. While in Peru, he met with a Peruvian National female named Consuelo Rodriguez who resided on Husares de

Junin Street, Lima, Peru. During a conversation, Mrs. Rodriguez mentioned that she could send the accused cocaine through the mail for $20 a gram.

After his return to Fort Dix, New Jersey, in April 1984, the accused discussed his trip to Peru with a SP4 Mario F. Icaza, then a member of Headquarters Company, Headquarters Command, US Army Training Center and Fort Dix, Fort Dix, New Jersey. He told SP4 Icaza that Mrs. Rodriguez said she could send cocaine through the mail for $20 a gram. It was agreed that the two would send money to Mrs. Rodriguez in return for cocaine. Further, it was agreed that SP4 Icaza would be in charge of cutting and selling the cocaine, and that he would provide the accused with a profit. They agreed to enter into this arrangement.

The accused and SP4 Icaza sent a money order for $320 to Mrs. Rodriguez with a letter requesting the receipt of approximately 16 grams of cocaine. The accused contributed $100 and SP4 Icaza contributed $220 towards the money order. Before sending the money order and letter, the accused approached SP4 Kenneth Davis, then a member of Company A, Headquarters Command, US Army Training Center and Fort Dix, Fort Dix, New Jersey, and asked SP4 Davis if he would allow the cocaine to come to his address located on Fort Dix, New Jersey. In exchange for this service, the accused offered to give SP4 Davis a small amount of cocaine for each letter he received. SP4 Davis agreed and the letters containing cocaine started coming to SP4 Davis' on-post residence.

Upon receipt of these letters, SP4 Davis would call the accused. The accused would then come to SP4 Davis' quarters, pick-up the letters and take the letters to SP4 Icaza's quarters. The accused picked-up approximately five to six letters from SP4 Davis' home. On at least two occasions SP4 Icaza accompanied the accused to pick-up the letters from SP4 Davis' quarters. After the accused picked-up the letters, as previously agreed, he would later return and distribute approximately 1 gram of cocaine to SP4 Davis.

The accused departed in May 1984 on a permanent change of station to the Federal Republic of Germany. For the letters that the accused had picked-up until that time of his PCS, he received approximately $500.

At the outset, we note that appellant pleaded guilty to the offense of wrongful distribution of drugs. He acknowledged that he distributed drugs to Davis on the charged occasions and recognized that he was waiving any defenses to this charge which might be raised. *Cf. Menna v. New York*, 423 U.S. 61, 62 n.2, 96 S.Ct. 241, 242, n. 2, 46 L.Ed.2d 195 (1975). There was some discussion concerning the separateness of the distribution offense from the conspiracy offense, but defense counsel conceded this issue. For the first time on appeal, appellant claims his conviction for distribution should be set aside because of the law of conspiracy. *See generally United States v. Hill*, 25 M.J. 411 (C.M.A.1988).

Appellant expressly concedes that he is not arguing "the so-called Swiderski defense" which was recognized by the Second Circuit in *United States v. Swiderski*, 548 F. 2d 445 (2d Cir.1977). This concession is appropriate since the possession by appellant and by Davis was neither simultaneous nor exclusively for personal use. *Id.* at 451. Here, Davis first received the drugs, then turned them over to appellant for further distribution, and later received a smaller portion of the cache from appellant as payment for his services. Clearly, the simple-user scenario described in *Swiderski* is not applicable here. *See United States v. Hill, supra* at 413.

Instead, appellant asserts that a distribution proscribed by Article 134 and paragraph 213*g* of the Manual for Courts-Martial, United States, 1969 (Revised edition), did not occur in this case because one conspirator transferred drugs to a second conspirator. He concedes that no authority exists for this argument except the general principle that a conspirator is liable for all

the offenses committed pursuant to the conspiracy by any of the conspirators. *See* para. 160, Manual, *supra.* Nevertheless, he argues that a person cannot technically "deliver" drugs "to the possession of another" who already constructively possesses or controls these drugs as part of a conspiracy. *See generally United States v. Zubko,* 18 M.J. 378, 385–86 (C.M.A.1984).

We note that paragraph 213*g,* Manual, *supra,* provides:

> (3) *Distribute.* "Distribute" means to deliver to the possession of another. "Deliver" means the actual, constructive, or attempted transfer of an item, whether or not there exists an agency relationship.

*See* para. 37*c* (3), Part IV, Manual for Courts-Martial, United States, 1984. No exception is provided for delivery to the possession of co-conspirators, and agency defenses are expressly precluded. This is basically a restatement of federal civilian criminal law which permits conviction for distribution between conspirators. *United States v. Pool,* 660 F. 2d 547, 561 (5th Cir.1981); *United States v. Wright,* 593 F. 2d 105 (9th Cir.1979). *See State v. Toppan,* 425 A. 2d 1336 (Me.1981). We agree and hold that Article 134 and paragraph 213*g,* 1969 Manual, *supra,* likewise permit findings of guilty in these circumstances.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT and Judge COX concur.