### UNITED STATES

v.

**Dustin A. TINGLER, Seaman (E–3), U.S. Navy.**

NMCCA 200202380.

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 5 June 2002.

Decided 14 Dec. 2006.

Maj J. Ed. Christiansen, USMC, Appellate Defense Counsel.

CDR M.G. McAlevy, JAGC, USN, Appellate Defense Counsel.

Lt A.M. Souders, JAGC, USNR, Appellate Defense Counsel.

Capt Diane Karr, JAGC, USNR, Appellate Defense Counsel.

Maj Kevin C. Harris, USMC, Appellate Government Counsel.

Before ROLPH, Chief Judge, CARVER, Senior Judge, and VOLLENWEIDER, Senior Judge.

CARVER, Senior Judge:

A military judge, sitting as a special court-martial, convicted the appellant, pursuant to his pleas, of two specifications of unauthorized absence, violation of a general order by inhaling gas for intoxication, five specifications of wrongful distribution of marijuana, two specifications of wrongful distribution of cocaine, one specification of wrongful use of marijuana, one specification of wrongful use of cocaine, and one specification of making and uttering approximately 15 bad checks, in violation of Articles 86, 112a, and 123a, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 912a, and 923a. The appellant was sentenced to a bad-conduct discharge, confinement for nine months, forfeiture of $700.00 pay per month for nine months, and reduction to pay grade E–1. The pretrial agreement had no effect on the sentence. In an act of clemency, the convening authority approved only so much of the sentence as provided for the bad-conduct discharge, confinement for six months, forfeitures of $700.00 pay per month for six months, and reduction to pay grade E–1.

In his initial brief, the appellant claimed that 1) the language in the convening authority's (CA's) action disapproved the bad-conduct discharge and 2) two of his pleas of guilty were improvident. Appellant's Brief of 8 Sep 2004 at 2, 7. In an affidavit at-

tached to the record, the CA declared that he intended to approve the bad-conduct discharge. We agreed that the language in the CA's action was ambiguous as to whether he approved the bad-conduct discharge or not and remanded for a new CA's action, without taking action on the second assignment of error. United States *United States v. Tingler*, No. 200202380, unpublished op. (N.M.Ct.Crim.App. 21 Jul 2005).

In the new action of 15 September 2005, the CA used the same language as he had in his previous CA's action. We remanded once more for another CA's action to clarify the ambiguous language regarding what sentence was approved. *United States United States v. Tingler*, No. 200202380, unpublished op. (N.M.Ct.Crim.App. 27 Dec 2005). Finally, in the third CA's action of 24 May 2006, the CA clearly approved the bad-conduct discharge.

The appellant now complains of a lack of speedy post-trial review. Appellant's Supplemental Brief of 6 Jul 2006 at 3. After carefully considering the record of trial, the appellant's assignments of error regarding the providence of the pleas and speedy review, and the Government's response, we conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ.

## Improvident Pleas of Guilty Wrongful Distribution of Drugs

■ In this assignment of error, the appellant contends that his pleas of guilty to wrongful distribution of cocaine to Fireman Recruit (FR) Robbins in Specifications 6 and 7 of Charge III are improvident. We disagree.

The appellant claims that he should not have been found guilty of wrongful distribution of cocaine because:

> When two individuals jointly acquire simultaneous possession of an illegal drug and then exchange the drug between themselves in their personal use of it, neither commits a distribution offense, rather, each commits only a possession offense.

*See United States v. Swiderski*, 548 F.2d 445 (2d Cir.1977).

Appellant's Brief at 8. A military judge shall not accept a plea of guilty without making sufficient inquiry of the accused to establish that there is a factual basis for the plea. Art. 45(a), UCMJ; *United States v. Care*, 40 C.M.R. 247, 253, 1969 WL 6059 (C.M.A.1969). "[T]he accused must be convinced of, and able to describe all the facts necessary to establish guilt." RULE FOR COURTS-MARTIAL 910(e), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2002 ed.), Discussion. The standard of review to determine whether a plea is provident is whether the record reveals a substantial basis in law and fact for questioning the plea. *United States v. Prater*, 32 M.J. 433, 436 (C.M.A.1991).

### A. Facts

Since the case was not contested, we must accept the facts admitted by the appellant during the providence inquiry. During the months of January and February 2002, the appellant was involved in various illegal drug offenses with five other Sailors, which resulted in his pleas of guilty to nine specifications of wrongful distribution and use of marijuana and crack cocaine. He also pled guilty to several other offenses.

For our discussion, we are only concerned with three specifications to which the appellant pled guilty: Specification 6 (distribution of crack cocaine to Fireman Apprentice (FA) Robbins on three occasions during February 2002), Specification 7 (distribution of crack cocaine to FA Robbins on one occasion during January 2002), and Specification 9 (wrongful use of crack cocaine on five or six occasions from 1 January 2002 through February 2002). FA Robbins was reduced to Fireman Recruit (FR) after his court-martial. We will refer to him by his grade at the time of the offenses.

The stipulation of fact, admitted pursuant to the pretrial agreement, contained a brief reference to the specifications in question:

> 4. On at least one occasion during February I purchased about $20 of crack cocaine from a civilian at the Best Western hotel and smoked it with FA Robbins.

548

Prosecution Exhibit 1. During the providence inquiry, which was not a model of clarity, the appellant testified that paragraph 4 of the stipulation of fact quoted above referred only to Specification 7 regarding a single distribution of cocaine alleged to have occurred in January. The appellant later testified that the distribution occurred in January as alleged rather than in February as stated in the stipulation of fact. Record at 69. On that occasion, the appellant said that he purchased the crack cocaine, returned to the hotel room with the cocaine, and smoked it with FA Robbins, distributing it to FA Robbins as they passed the cocaine back and forth. As to Specification 6, the appellant stated that on three separate occasions he accompanied FA Robbins while Robbins purchased crack cocaine. On each of those occasions, they returned to the hotel where they smoked the cocaine together, distributing it to each other back and forth. The use of cocaine charged in Specification 9 consisted of the 4 separate times he shared cocaine with FA Robbins and 1 or 2 other occasions when he smoked cocaine by himself. The appellant was not charged with possession of cocaine.

## B. The *Swiderski* Ruling

The appellant contends that he is not legally guilty of distribution of cocaine to FA Robbins as alleged in Specifications 6 and 7 because he and FA Robbins jointly and simultaneously acquired the cocaine for the purpose of personal use, citing the *Swiderski* decision. The U.S. Court of Appeals for the Second Circuit did not explain what circumstances would support a finding of joint, simultaneous acquisition. The appellant contends that the facts in his case are similar enough to those in *Swiderski* to support a finding that he jointly and simultaneously acquired the cocaine with FA Robbins.

Swiderski and his fiancée (later his wife), Ms. De Los Santos, were convicted by a jury, contrary to their pleas, of possession of cocaine with intent to distribute to each other in violation of a federal criminal statute. For the purpose of their ruling, the Second Circuit assumed the following facts from the evidence presented. In late 1973, Swiderski gave a sample of THC to Davis, a drug user and dealer, who, unbeknownst to Swiderski, was also a Government informant. Over the next year and a half, the two discussed drug dealing on several occasions. On 31 May 1975, Swiderski asked Davis for a quarter pound of cocaine. Two days later, Davis told Swiderski that he could obtain the cocaine the next day. On 3 June 1975, Swiderski and De Los Santos picked up Davis at his hotel and drove to a studio apartment to meet Bush, the supplier. Bush offered Swiderski a package of cocaine. Swiderski and De Los Santos sampled the cocaine. De Los Santos said that the cocaine was not good enough for personal use but they had a buyer for it. Swiderski told Bush that they could do business in larger quantities if Bush could obtain higher quality cocaine at a better price. Swiderski gave $1,250.00 to Bush and received the cocaine in return, placing the cocaine in his pants pocket. De Los Santos did not provide any of the funds, nor did she touch the cocaine except to sample it. A short time later, Swiderski and De Los Santos were arrested in the car. The cocaine was found in the purse of De Los Santos. Testifying on their own behalf, Swiderski and De Los Santos claimed at trial that they had not intended to purchase cocaine to sell, but only to get high and that they paid the money out of fear in order to be allowed to leave the premises safely.

On appeal, the Second Circuit held that the district judge erred in defining the term "distribution" for the jury. During deliberations, the jury asked the judge, "If both defendants possess the drug (i.e., one paid for it and it was found in the other's handbag) can 'intent to distribute' mean giving the drug to the other or must third parties be involved?" *Swiderski*, 548 F.2d at 449. The judge repeated his charge on possession with intent to distribute, and over defense objection, additionally instructed the jury as follows:

> Well, intent to distribute merely means that you intend at some point at a later time to pass all or some of it on. It could mean a sale; it could mean that you could give it away. You could give it to a friend of yours or even to your fiancée. If you are going to do that, that is a distribution.

*Swiderski*, 548 F.2d at 449. The Second Circuit ruled that the judge's instruction was legally incorrect. It held that the jury should have been instructed that if they found that the two defendants acquired simultaneous possession of the drug with the intent to share it for personal use, they would not be guilty of the greater offense of possession with the intent to distribute. The Court cited no legal precedent in ruling that one who acquired simultaneous and joint possession of a drug for personal use can only be convicted of simple joint possession and not distribution to each other. *Swiderski*, 548 F.2d at 450.

Rather than remand for another trial, the Court disapproved the aggravating language of distribution, affirmed the lesser offense of simple possession, and remanded for re-sentencing. In its ruling, the Second Circuit relied upon a distinction in the statutory scheme of Title 21, Chapter 13, between commercial drug transactions and personal use of illegal drugs:

> The precise issue raised by the appellants is whether a statutory "transfer" may occur between two individuals in joint possession of a controlled substance simultaneously acquired for their own use.
>
> In order to interpret the foregoing words of the Act it is important to understand their place in the statutory drug enforcement scheme as a whole, which draws a sharp distinction between drug offenses of a commercial nature and illicit personal use of controlled substances.
>
> . . . .
>
> For this reason the House Report equated "transactions involving others" and "distribution to others" with the harsher penalties provided by §§ 841 and 848. Where only individual possession and use is concerned, on the other hand, the Act prescribes lesser penalties and emphasizes rehabilitation of the drug abuser. *Similarly, where two individuals simultaneously and jointly acquire possession of a drug for their own use, intending only to share it together, their only crime is personal drug abuse—simple joint possession, without any intent to distribute the drug further.* Since both acquire possession from the outset and neither intends to distribute the drug to a third person, neither serves as a link in the chain of distribution. For purposes of the Act they must therefore be treated as possessors for personal use rather than for further distribution. Their simple joint possession does not pose any of the evils which Congress sought to deter and punish through the more severe penalties provided for those engaged in a "continuing criminal enterprise" or in drug distribution.

*Swiderski*, 548 F.2d at 449–50(emphasis added)(footnote omitted). The validity of the *Swiderski* reasoning is in considerable doubt among the federal circuits. "No other circuit has followed the Second Circuit in *Swiderski.*" *United States v. Washington*, 41 F.3d 917, 920 n. 2 (4th Cir.1994). *See United States v. Reid*, 142 Fed.Appx. 479 (1st Cir. 2005); *United States v. Speer*, 30 F.3d 605 (5th Cir.1994); *United States v. Wright*, 593 F.2d 105 (9th Cir.1979).

### C. *Swiderski* Does Not Apply to Courts–Martial

The Second Circuit relied extensively on its interpretation of the congressional intent behind the federal criminal statute. Military law draws no such distinction between commercial and personal use. MANUAL FOR COURTS-MARTIAL, UNITED STATES (2002 ed.), Part IV, ¶ 37. We hold that sharing an illegal drug between two servicemembers is distribution and not "personal use." We expressly reject *Swiderski's* applicability to drug offenses alleged under the UCMJ.

### D. Factual Distinction

Assuming *arguendo* that *Swiderski* does apply to military courts-martial, we are confident that it does not control the appellant's case because it is factually distinguishable, using the precedent of narrowly limiting *Swiderski* to the precise facts in that case. We will examine the facts in several federal and military courts to show how various courts have narrowly construed *Swiderski.*

In *Reid*, the U.S. Court of Appeals for the First Circuit did not expressly determine the validity of *Swiderski*, but instead held that a conspiracy to purchase drugs was insufficient

to support a finding that the possession was joint and simultaneous:

"where one or more individuals purchase or acquire drugs and then share the drugs with others, there is a distribution, notwithstanding the existence of a conspiracy or agreement among all of the parties involved to acquire and use drugs." Sentencing Hearing Tr. at 7. Thus, because "only ... Reid ... went inside the drug dealer's apartment to get the cocaine," Reid and the other members of the conspiracy "did not acquire possession of the drugs simultaneously" and therefore, "Reid possessed with the intent to distribute."

*Reid,* 142 Fed.Appx. at 481. In Washington, 41 F.3d at 920, the Fourth Circuit also did not reach the question of whether *Swiderski* is valid, but instead distinguished the facts by holding that the defendant did not jointly acquire simultaneous possession where he purchased the drugs with funds provided by others with the intent of sharing it with them.

We note that the Court of Appeals for the Armed Forces, when faced with the opportunity to do so, has likewise failed to expressly adopt the *Swiderski* rationale, but has instead distinguished the case on its facts. In *United States v. Tuero,* 26 M.J. 106 (C.M.A. 1988), our superior court held that the appellant and Specialist 4(SP4) Davis did not acquire simultaneous possession where both jointly contributed funds to a supplier who mailed the drugs to SP4 Davis. SP4 Davis then took the unopened package of drugs to the appellant.

In similar fashion, we have also distinguished the facts in several close cases. In *United States v. Manley,* 52 M.J. 748 (N.M.Ct.Crim.App.2000), we affirmed the appellant's conviction of distribution of cocaine to Sandoval. The appellant and Sandoval acquired the cocaine jointly, but the appellant swallowed the container of cocaine to avoid detection. A few days later, after the cocaine passed through the appellant's system, they shared the drug. We held that the joint possession was extinguished when the appellant swallowed the cocaine. We therefore added the requirement that the joint

possession must be continuous in order to fit within the *Swiderski* rationale.

In *United States v. Glazebrook,* No. 200500701, 2005 WL 2467769 (N.M.Ct.Crim. App. 29 Sep 2005), *rev. den.* 63 M.J. 282 (C.A.A.F.2006), we affirmed a plea of guilty to distribution of marijuana where the appellant was sitting with a group of friends when one pulled out a marijuana cigarette, lit it, and all passed it around. When the cigarette reached him, the appellant smoked the marijuana and passed it to the next person. We held that *Swiderski* did not apply because there was no evidence of a joint possession prior to the distribution.

The Air Force Court of Military Review held that the *Swiderski* ruling does not apply to anyone who is a "link" or middleman in the drug abuse chain, providing the drug to someone other than those who jointly acquired the drug. *United States v. Espronceda,* 36 M.J. 535, 540–41 (A.F.C.M.R.1992). *See United States v. Pearson,* 391 F.3d 1072, 1076–77 (9th Cir.2004)(holding that *Swiderski* did not apply to the appellant's conviction of possession with intent to distribute methamphetamine to Ms. Fresh where the appellant and Ms. Fresh jointly made the solicitation to the dealer to acquire the drug for personal use, but Ms. Fresh was not physically present when the dealer physically transferred the drug to the appellant, thus the appellant operated as the link between the dealer and the intended user); *United States v. Wright,* 593 F.2d 105 (9th Cir.)(holding that *Swiderski* did not apply to a conviction of distribution where the appellant alone purchased heroin with funds provided by an undercover agent and then shared the heroin with her and distinguishing cases involving receipt of stolen property); *United States v. Daniels,* No. 200000835, 2005 WL 2704964 (N.M.Ct.Crim.App. 18 Oct. 2005), *rev. den.,* 63 M.J. 327 (C.A.A.F.2006)(holding that *Swiderski* does not apply where the appellant obtained the marijuana separately before he shared the drug with two others).

In the case before us, the facts are different for each of the two specifications in question, but, we find that in neither case did the appellant acquire cocaine jointly and simulta-

neously with FA Robbins. As to Specification 6, FA Robbins purchased the cocaine on three separate occasions while accompanied by the appellant. Although the appellant was present when FA Robbins obtained the cocaine, there is no evidence that the appellant came into physical possession of the cocaine until the two later shared the drug in the hotel room. "Mere presence at the scene of a crime does not make one a principal...." MCM, Part IV, ¶ 1b(3)(b).

■ In Specification 7, the appellant said that he acquired the cocaine and returned to the hotel room to share it with FA Robbins. The appellant did not state whether or not FA Robbins accompanied him when he obtained the cocaine. But he said that he bought the cocaine. Under the circumstances, we conclude that the appellant and FA Robbins did not possess the cocaine jointly at the time that it was obtained from the source. Thus, we find that the appellant did not acquire joint and simultaneous possession of cocaine with FA Robbins in either Specification 6 or 7.

## E. Distribution Back to Source

■ There is one remaining question as to Specification 6. Even if the *Swiderski* holding is inapplicable or distinguishable, can the appellant be convicted of distribution of cocaine by sharing cocaine with FA Robbins after FA Robbins originally provided the cocaine to the appellant? The military judge recognized this issue, but was advised by both the trial defense counsel and the trial counsel that it was nonetheless a distribution. The appellant agreed that "technically there is a distribution." Record at 65. We agree with the parties that the appellant was properly convicted of distribution to FA Robbins after having received the cocaine from FA Robbins.

In *United States v. Ratleff*, 34 M.J. 80 (C.M.A.1992), the Court of Appeals for the Armed Forces (CAAF) affirmed a conviction for this type of "return" distribution. The appellant in *Ratleff* accompanied Private First Class (PFC) Jaundoo to the mess hall while PFC Jaundoo retrieved some hashish in a can where PFC Jaundoo had hidden it. Back in the appellant's room, PFC Jaundoo gave the appellant the can of hashish. The appellant opened the can and gave it back to PFC Jaundoo. Both then smoked the hashish, handing it back and forth. The appellant pled guilty to distribution of the hashish to PFC Jaundoo as well as use of the hashish. The CAAF held that:

From our review of the undisputed record, appellant took possession of the hashish while it was in its container, ripped open the container, retrieved the hashish, and handed it to Private First Class Jaundoo. Given this set of facts, appellant, by passing the hashish to Private First Class Jaundoo, is guilty of distribution.

*Ratleff*, 34 M.J. at 81–82 (citations omitted). We have also affirmed a conviction for distribution of illegal drugs back to the person who originally acquired joint possession with the appellant. *Manley*, 52 M.J. at 750. In *Tuero*, our superior court affirmed a conviction for distribution from the appellant to SP4 Davis even though the drugs were initially received by SP4 Davis who handed them to the appellant before the appellant distributed some of the drugs back to SP4 Davis. In *United States v. Hill*, 25 M.J. 411 (C.M.A.1988), the appellant's conviction as an aider and abettor to distribution was upheld where the appellant provided part of the funds to the undercover agent to purchase the drugs from the source who distributed the drugs to the undercover agent.

After a thorough review of the record of trial, we find that there is not a substantial basis in law and fact for questioning the appellant's guilty pleas to Specifications 6 and 7 of Charge III. *See Prater*, 32 M.J. at 433.

### Speedy Review

In his supplemental assignment of error, the appellant alleges that he was denied his right to a speedy review of his conviction. He further states that since he has already served his confinement, the only meaningful relief would be to disapprove the bad-conduct discharge. We decline to grant relief.

■ An appellant's right to a timely review extends to the post-trial and appellate process. *See Diaz v. Judge Advocate General of the Navy*, 59 M.J. 34, 37 (C.A.A.F.2003).

This right is embodied in Article 67, UCMJ, as well as the Due Process Clause of the Fifth Amendment. *See United States v. Moreno*, 63 M.J. 129 (C.A.A.F.2006); *Toohey v. United States*, 60 M.J. 100, 101–02 (C.A.A.F.2004); *Diaz*, 59 M.J. at 37–38.

 We consider four factors in determining if post-trial delay violates the appellant's due process rights: (1) the length of the delay, (2) the reasons for the delay, (3) the appellant's assertion of the right to a timely appeal, and (4) prejudice to the appellant. *United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F.2005)(citing *Toohey*, 60 M.J. at 102). If the length of the delay itself is not unreasonable, there is no need for further inquiry. If, however, we conclude that the length of the delay is "facially unreasonable," we must balance the length of the delay with the other three factors. *Id.* Moreover, in extreme cases, the delay itself may " 'give rise to a strong presumption of evidentiary prejudice.' " *Id.* (quoting *Toohey*, 60 M.J. at 102).

Here, there was a delay of 1916 days from the date of sentencing to the submission of all appellate briefs. The delay was primarily attributable to delay in executing three CA's actions and to delay in filing the appellant's assignments of error and brief. We find that the delay alone is facially unreasonable, triggering a due process review. *See Moreno*, 63 M.J. at 129; *United States v. Brown*, 62 M.J. 602, (N.M.Ct.Crim.App. 2005)(*en banc*).

We next look to the third and fourth factors. We do not find any assertion of the appellant's right to a timely review. As to the fourth factor, we do not find any evidence of prejudice to the appellant. We therefore conclude that there has been no due process violation due to the post-trial delay.

Assuming *arguendo* that there has been a denial of due process, we hold that the error was harmless beyond a reasonable doubt. *United States v. Toohey*, 63 M.J. 353 (C.A.A.F.2006). We note that the appellant completed his service to confinement early in the post-trial process, none of his assignments of error merited relief, and there was no other evidence of prejudice.

We are also aware of our authority to grant relief under Article 66, UCMJ, even in the absence of specific prejudice, but we decline to do so. *United States v. Oestmann*, 61 M.J. 103 (C.A.A.F.2005); *Jones*, 61 M.J. at 83; *Toohey*, 60 M.J. at 100; *Diaz*, 59 M.J. at 37; *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F.2002). In particular, we have considered the factors set forth in *Brown*, 62 M.J. at 602.

### Conclusion

Accordingly, the findings of guilty and the sentence, as approved by the convening authority, are affirmed.

Chief Judge ROLPH and Senior Judge VOLLENWEIDER concur.