# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, CAMPANELLA, and HAIGHT
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E2 TIMOTHY E. BENNITT**
**United States Army, Appellant**

ARMY 20100172

Headquarters, I Corps
Kwasi L. Hawks, Military Judge
Colonel Mitchell R. Chitwood, Staff Judge Advocate (pre-trial)
Lieutenant Colonel Gregg A. Engler, Staff Judge Advocate (post-trial)
Colonel Walter M. Hudson, Staff Judge Advocate (addendum)

For Appellant: Major Richard E. Gorini, JA; Captain A. Jason Nef, JA (on brief); Colonel Patricia A. Ham, JA; Major Jacob D. Bashore, JA (on reply brief); Colonel Patricia A. Ham, JA; Major Jacob D. Bashore, JA (on Motion for Reconsideration of decision); Colonel Kevin Boyle, JA; Lieutenant Colonel Peter Kageleiry, Jr., JA; Major Jacob D. Bashore, JA (on Motion for Reconsideration of sentence reassessment).

For Appellee: Major Katherine S. Gowel, JA; Captain Kenneth W. Borgnino, JA (on brief); Colonel John P. Carrell, JA; Lieutenant James L. Varley, JA; Major Elisabeth A. Claus, JA; Major Kenneth W. Borgnino, JA (on response to Motion for Reconsideration of sentence reassessment)

25 March 2014

--------------------------------------------------------------------
MEMORANDUM OPINION ON RECONSIDERATION
--------------------------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

COOK, Senior Judge:

A military judge sitting as a general court-martial convicted appellant, consistent with his pleas, of four specifications of wrongful distribution of a controlled substance and four specifications of wrongful use of a controlled substance, each in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a (2006) [hereinafter UCMJ]. Contrary to appellant's plea, the military judge also convicted appellant of involuntary manslaughter while perpetrating an

offense directly affecting the person of LK by aiding or abetting her wrongful use of a controlled substance in violation of Article 119(b)(2), UCMJ.[1] This wrongful use ultimately led to LK's death by drug overdose. The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for seventy months, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority also credited appellant with 360 days of confinement against his sentence to confinement.

On 16 May 2012, this court affirmed the findings and sentence. Our superior court, in *United States v. Bennitt*, 72 M.J. 266, 271 (C.A.A.F. 2013), reversed our decision in regard to the Article 119(b)(2), UCMJ, offense. In setting aside the finding of guilty and dismissing the specification for legal insufficiency, our superior court found appellant's distribution of oxymorphone to LK, his sixteen year old girlfriend, which led to her death by overdose, did not "constitute an offense directly affecting the person." Our superior court also set aside appellant's sentence, affirmed the remaining findings of guilty, and returned the record of trial to The Judge Advocate General of the Army, who in turn returned the record to this court for a sentence reassessment or rehearing on the sentence.

On 25 September 2013, in a Summary Disposition on Further Review, after reassessing the sentence and the entire record, we affirmed the sentence. In a timely filed Motion for Reconsideration, appellant's counsel requested we reconsider our 25 September 2013 decision, alleging that our ruling "overlooks material legal and factual matters" and ultimately requested that appellant receive either a sentence re-hearing or significant sentence relief in the form of a bad-conduct discharge instead of the approved dishonorable discharge. We granted appellant's Motion for Reconsideration on 15 November 2013. For the reasons listed below, we again affirm the approved sentence.

## LAW AND DISCUSSION

In deciding whether we can reassess appellant's sentence, we consider the totality of the circumstances presented by appellant's case, including the principles and non-exhaustive list of factors[2] articulated by our superior court in *United States*

---

[1] The military judge acquitted appellant of involuntary manslaughter by culpable negligence under Article 119(b)(1), UCMJ.

[2] (1) "Dramatic changes in penalty landscape and exposure."; (2) "Whether an appellant chose sentencing by members or a military judge alone."; (3) "Whether the nature of the remaining offenses captures the gravamen of criminal conduct included within the original offenses . . . ."; and (4) "Whether the remaining offenses are of the type that judges of the courts of criminal appeals should have the experience and

(continued . . .)

*v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986).

First, we note the penalty landscape and exposure has not been dramatically changed by our superior court setting aside appellant's Article 119(b)(2), UCMJ, conviction. After trial, appellant stood convicted of offenses that exposed him to eighty-two years of confinement. The setting aside of the Article 119(b)(2), UCMJ conviction reduced appellant's maximum sentence to confinement by ten years. As such, appellant's approved sentence to seventy months of confinement is still well below the adjusted maximum period of confinement. This factor weighs in favor of our ability to reassess his sentence.

Second, appellant chose to be sentenced by a military judge alone and "because the courts of criminal appeals are more likely to be certain of what a military judge would have done as opposed to members," this factor also favors our ability to reassess his sentence. *Winckelmann*, 73 M.J. at 16.

With respect to the third factor, appellant argues, generally, that because he now stands acquitted of involuntary manslaughter, evidence relating to his distribution of oxymorphone to LK would not have been admissible under Rule for Courts-Martial [hereinafter R.C.M.] 1001(b)(4). This rule, during presentencing, only allows the admission of "aggravating circumstances directly relating to or resulting from the offenses of which the accused has been found guilty."

In support of this position, appellant first argues he has not been found guilty of distributing oxymorphone to LK because his guilty plea to, and resulting conviction of, distributing oxymorphone on divers occasions, on or about 14 February 2009, did not include the distribution of oxymorphone to LK. Appellant then argues that because he has not been convicted of distributing oxymorphone to LK, R.C.M. 1001(b)(4) would have precluded evidence concerning the consequences of that distribution.

In ultimately rejecting appellant's argument, we initially note the significance of how the government charged appellant with oxymorphone distribution and involuntary manslaughter. Appellant was charged with distributing oxymorphone on divers occasions between on or about 14 February 2009 and on or about 15 February 2009. During this same time period, appellant was charged with two specifications of involuntary manslaughter based on the overdose resulting in LK's death. It is clear from the record the government prosecuted the involuntary manslaughter

---

(. . . continued)
familiarity with to reliably determine what sentence would have been imposed at trial." *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013).

specifications under a theory that appellant's unlawful killing of LK was a form of aggravated distribution of oxymorphone, either resulting in a death through culpable negligence or, alternatively, the lethal distribution was an offense directly affecting the person of LK.

In other words, based on the charging framework and trial presentation, the distribution of oxymorphone charge included the distribution to LK. The military judge convicted appellant of this distribution charge as admitted to by the appellant, but also as proven by the evidence. There could not have been a separate conviction for distribution of oxymorphone to LK as the existing specification covered that time frame and behavior.

The government was, therefore, free to present evidence beyond the factual basis admitted in the providence inquiry as long as this evidence was not in conflict with appellant's guilty plea. *See United States v. Shupe*, 36 M.J. 431, 436 (C.M.A. 1993) (co-conspirator's testimony concerning five drug distributions in addition to the one pleaded to "was proper aggravation, because it showed 'the continuous nature of the charged conduct and its full impact on the military community'"); *United States v. Ross*, 34 M.J. 183, 187 (C.M.A. 1992) (permissible to show that appellant altered twenty to thirty enlistment aptitude tests, even though he pleaded guilty to only altering four); *United States v. Mullens*, 29 M.J. 398, 400 (C.M.A. 1990) (uncharged misconduct consisted of "a continuous course of conduct involving the same or similar crimes, the same victims, and a similar situs . . ."); *United States v. Silva*, 21 M.J. 336, 337 (C.M.A. 1986) (uncharged misconduct was "integral part of his criminal course of conduct"); *United States v. Vickers*, 13 M.J. 403, 406 (C.M.A. 1982) ("evidence which is directly related to the offense for which an accused is to be sentenced" may be presented "so that the circumstances surrounding that offense or its repercussions may be understood by the sentencing authority").

In moving to the case's current posture, appellant stands convicted of distributing oxymorphone on or about 14 February 2009 on divers occasions. The evidence in this case, including appellant's own confession that was properly admitted on the merits, showed that on or about 14 February 2009, appellant distributed oxymorphone to multiple persons, including LK, and then went further in facilitating LK's use of the drug. Contrary to appellant's current assertions, our superior court found that appellant did distribute drugs to LK; however, it ruled that particular distribution did not constitute an Article 119(b)(2), UCMJ, qualifying offense. *See Bennitt*, 72 M.J. at 271 (recognizing that in *United States v. Sargent*, 18 M.J. 331, 339 (C.M.A. 1984), the Court of Military Appeals "suggested . . . that under some circumstances drug distribution may constitute an 'offense . . . directly affecting the person.'").

We, therefore, find that appellant's conviction for oxymorphone distribution on divers occasions covers and includes his distribution to LK. This was specifically discussed by appellant in his confession, wherein he admitted to: (1)

going to a supplier's house; (2) purchasing oxymorphone pills for his own purposes; (3) later ingesting two of his pills in LK's presence, who then asked to use another of appellant's pills; (4) responding to LK's request to use the drug by crushing an oxymorphone pill for LK and her friend; and (5) dividing the contents for LK and her friend, who both then ingested the drug. Under these facts, appellant's "aiding and abetting the wrongful use of a controlled substance" by LK constituted distribution. *See Manual for Courts-Martial, United States* (2008 ed.), pt. IV, ¶ 37.c.(3); *United States v. Ratleff*, 34 M.J. 80 (C.M.A. 1992); *See also United States v. Branch*, 483 F.2d 955 (9th Cir. 1973); *United States v. Tingler*, 65 M.J. 545, 549 (N.M. Ct. Crim. App. 2006) (sharing an illegal drug is distribution). As a result, all of the consequences associated with that distribution were and remain admissible, to include a toxicologist's trial testimony that the oxymorphone use played a major role in LK's death. *See* R.C.M. 1001; *United States v. Terlep*, 57 M.J. 344 (C.A.A.F. 2002).

In applying R.C.M. 1001(b)(4) to appellant's case and in light of the cases cited above, it is clear the evidence being challenged would have been properly admitted aggravation evidence. It showed the continuous and aggravating nature of appellant's conduct, involved the same crime and same location, was an integral part of his criminal course of conduct and its admission puts the entire incident, to include its impact, in appropriate context.

The remaining offenses of which appellant stands convicted, linked with the aggravating evidence concerning appellant's distribution of oxymorphone to LK and her resulting death, continue to "capture the gravamen" of appellant's criminal conduct and, therefore, the third *Winckelmann* factor weighs in favor of our ability to reassess in this case.

Finally, in reviewing the fourth factor, based on our experience and familiarity with the type of charges that remain, we are confident we can reliably determine what sentence would have been imposed at trial. Therefore, after now concluding that all four enumerated *Winckelmann* factors support our ability to reassess appellant's sentence and after considering the totality of the circumstances presented by his case—to include the noted error—we ultimately find we are able to reassess appellant's sentence.

## CONCLUSION

The decision of this court in this case dated 25 September 2013 is withdrawn. Reassessing the sentence based on the error noted, the amended findings of guilty and the entire record, we AFFIRM the sentence as approved by the convening authority. We find this reassessed sentence is not only purged of any error, but is also appropriate.

BENNITT—ARMY 20100172



FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court