**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Airman First Class ROBERT T. MCCORMICK**
**United States Air Force**

**ACM 38743**

**23 June 2016**

Sentence adjudged 14 November 2014 by GCM convened at Hill Air Force Base, Utah. Military Judge: Matthew P. Stoffel

Approved sentence: Bad-conduct discharge; hard labor without confinement for 3 months; restriction to Hill Air Force Base, Utah, for 2 months; forfeiture of $532.00 pay per month for 3 months; and reduction to E-1.

Appellate Counsel for Appellant: Major Luke D. Wilson and Captain Johnathan D. Legg.

Appellate Counsel for the United States: Major Mary Ellen Payne; Major Jeremy D. Gehman; and Gerald R. Bruce, Esquire.

Before

ALLRED, SANTORO, and BROWN
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

SANTORO, Judge:

At a general court-martial, a military judge accepted Appellant's guilty pleas to dereliction of duty for failing to register a privately-owned firearm stored on base; three specifications of providing alcohol to minors; one specification of wrongfully consuming alcohol while under age; 15 specifications alleging the wrongful use and distribution of 3,4-methylenedioxymethamphetamine (MDMA); one specification of possession of a firearm while an unlawful user of a controlled substance; and one specification of conspiracy to distribute MDMA; in violation of Articles 81, 92, 112a, and 134, UCMJ, 10

U.S.C. §§ 881, 892, 912a, 934. Officer members sentenced him to a bad-conduct discharge; hard labor without confinement for 3 months; restriction to Hill Air Force Base, Utah, for 2 months; forfeiture of $532.00 pay per month for 3 months; and reduction to E-1.

Appellant asserts that his pleas to various specifications are improvident. We disagree and affirm.

*Background*

The drug offenses to which Appellant pled guilty all involved the use and distribution of MDMA. Appellant and friends, both military and civilian, frequently attended "raves." Appellant ingested MDMA prior to and during the raves. To obtain the MDMA, Appellant collected money from one or more friends, traveled with some or all of them to a drug dealer's residence, purchased the MDMA, and then distributed it amongst those who had pooled their money.

Air Force Instruction (AFI) 31-101, *Integrated Defense*, ¶ 8.4.2.4.1.1 (2013) requires that privately-owned firearms stored on Air Force installations be registered with Security Forces. Appellant stored an M4 carbine (AR-15) belonging to Airman First Class (A1C) AB at his residence on Hill Air Force Base without complying with AFI 31-101's registration requirements. Title 18, United States Code, Section 922 prohibits the possession of a firearm that traveled in interstate commerce by one who is a user of illegal drugs, and Appellant's possession of A1C AB's firearm coincided with his period of drug use.

Additionally, on multiple occasions, Appellant provided alcohol to at least five people he knew to be under the legal drinking age. Appellant himself drank alcohol while under the legal drinking age on at least six occasions.

Additional facts necessary to resolve the assignment of error are included below.

*Providence of Guilty Pleas*

Appellant attacks the providence of his guilty pleas in several ways. First, he argues that because he and others had pooled their money, he cannot be guilty of distribution of a controlled substance for distributing MDMA to those on whose behalf he made the purchase. Second, he argues that there is insufficient evidence to establish that he had a duty not to provide alcohol to minors. Third, he argues that he cannot be found guilty of conspiring to distribute controlled substances when he was the purchaser of the substances from his co-conspirator.

We review a military judge's acceptance of a guilty plea for an abuse of discretion and questions of law arising therefrom de novo. *United States v. Inabinette*, 66 M.J. 320,

322 (C.A.A.F. 2008). In order to prevail on appeal, Appellant has the burden to demonstrate "a substantial basis in law and fact for questioning the guilty plea." *Id.* (quoting *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991)). The "mere possibility" of a conflict between the accused's plea and statements or other evidence in the record is not a sufficient basis to overturn the trial results. *United States v. Garcia*, 44 M.J. 496, 498 (C.A.A.F. 1996) (quoting *Prater*, 32 M.J. at 436). "The providence of a plea is based not only on the accused's understanding and recitation of the factual history of the crime, but also on an understanding of how the law relates to those facts." *United States v. Medina*, 66 M.J. 21, 26 (C.A.A.F. 2008) (citing *United States v. Care*, 40 C.M.R. 247, 250–51 (C.M.A. 1969)). "We examine the totality of the circumstances of the providence inquiry, including the stipulation of fact, as well as the relationship between the accused's responses to leading questions and the full range of the accused's responses during the plea inquiry." *United States v. Nance*, 67 M.J. 362, 366 (C.A.A.F. 2009).

*Distribution of a Controlled Substance*

Appellant challenges the sufficiency of his guilty pleas to six specifications of wrongful distribution of MDMA. On the first instance, in February 2013, Appellant and Airman Basic (AB) NW went to the home of a person they knew to be a dealer of MDMA. They pooled their money outside so they would only have to engage in one transaction. They both went inside the dealer's home. Appellant paid for and received the substance, then handed the MDMA to AB NW as they were preparing to leave. A second occasion in March 2013 involved essentially the same scenario and was the subject of a second distribution specification.

In April 2013, Appellant, AB NW, and three friends pooled their money to purchase MDMA. All drove to the dealer's residence but only Appellant and AB NW went into the home. Once back in the car, Appellant gave all but his own portion of the MDMA to AB NW, who then distributed the remainder among himself and the three civilian friends.

In May 2013, Appellant and AB NW traveled to the drug dealer's home. Appellant purchased MDMA with his own money and money that had been collected from AB NW and Mr. TV, a civilian. Appellant and AB NW went into the residence and Appellant purchased the MDMA. Appellant handed the MDMA to AB NW knowing that when they returned to their vehicle, AB NW would give a quantity of MDMA to Mr. TV.

In June 2013, Appellant, AB NW, and two friends went to the same drug dealer's home. All four entered. The dealer did not have MDMA available but called a third person to deliver it. An hour or two later, the other dealer arrived and gave the MDMA to the initial dealer, who then handed it to Appellant. Instead of dividing the drugs amongst themselves immediately, the four left the MDMA in the trunk of the car they would later drive to Las Vegas to attend a "rave." Once in Las Vegas, Appellant distributed the MDMA to the others and retained a portion for himself.

ACM 38743

In August 2013, Appellant and six friends traveled to the drug dealer's residence. AB NW and Appellant entered the residence and purchased MDMA with money all six had pooled. Appellant retained his portion and the portion for one of his friends, Ms. CC, and gave the rest to AB NW to distribute among the group. Appellant later gave Ms. CC her portion of the MDMA once they arrived at the rave. AB NW distributed the remainder of the MDMA to the others.

Appellant acknowledged that he distributed drugs on the charged occasions and recognized that by pleading guilty he was waiving any potential defenses to those specifications. Citing *United States v. Swiderski*, 548 F.2d 445 (2d Cir. 1977), he now argues that his pleas of guilty to the specifications alleging that he wrongfully distributed a controlled substance were improvident because joint purchasers and possessors of a controlled substance who intend to share it as users may not be found guilty of distribution by sharing it.

Swiderski and his fellow defendant (his fiancée, later wife) were charged with and convicted of possession of cocaine with the intent to distribute. *Id.* at 447. Both defendants met with a drug dealer. *Id.* at 448. They each sampled the dealer's cocaine and said that while the quality wasn't good enough for their use, they had a buyer who would take it. *Id.* Swiderski paid the dealer for the cocaine he intended to take to his buyer and then put the package of cocaine in his pocket. *Id.* When drug enforcement agents stopped and arrested the defendants a short time later, the cocaine was in Swiderski's fiancée's purse. *Id.*

During deliberations, the jury asked whether "intent to distribute" could be established by one defendant's plan to give the drug to the other or whether a third party had to be involved. *Id.* at 449. The judge instructed the jury that an intent to transfer from Swiderski to his co-defendant (or vice versa) was sufficient to establish an intent to distribute. *Id.*

On appeal, the Second Circuit held that

> where two individuals simultaneously and jointly acquire possession of a drug for their own use, intending only to share it together, their only crime is personal drug abuse—simple joint possession, without any intent to distribute the drug further. Since both acquire possession from the outset and neither intends to distribute the drug to a third person, neither serves as a link in the chain of distribution.

*Id*. at 450.

The Second Circuit further explained:

> [J]oint possession of a drug does not *preclude* a finding of possession with intent to distribute to a third person . . . . Whether such an inference may be drawn depends upon the surrounding circumstances, including the nature of the relationship (whether it is commercial rather than personal), the quantity of the drug (whether it is too large for personal use only), the number of people involved, and statements or conduct on the part of the defendants. But the mere existence of joint possession by two closely related persons—here an engaged couple who later married one another—is alone not enough to provide the basis for such an inference.

*Id.* (emphasis added). The Second Circuit also noted that "possession . . . may be established by evidence of actual, physical possession or on the basis of the power to exercise control over the substance" (i.e., constructive possession). *Id.* at 449 n.2 (citation omitted).

The *Swiderski* instruction has not received widespread acceptance. In *United States v. Wright*, 593 F.2d 105 (9th Cir. 1979), the Ninth Circuit considered and rejected a *Swiderski*-based jury instruction, reasoning:

> That the courts for the purposes of defining possession of contraband do not distinguish between actual and constructive possession is irrelevant to the definition of distribution . . . . Congress intended to prevent individuals from acquiring drugs for whatever purpose on behalf of others and then transferring the drugs to those others. [The defendant] did just that. As the Second Circuit recognized in *Swiderski*: "The agent who delivers to his principal performs a service in increasing the distribution of narcotics. Without the agent's services the principal might never come into possession of the drug."

*Id.* at 108 (citations omitted).

Our superior court has cited and discussed, but never expressly adopted, *Swiderski*. *See, e.g.*, *United States v. Ratleff*, 34 M.J. 80 (C.M.A. 1992); *United States v. Hill*, 25 M.J. 411 (C.M.A. 1988); *United States v. Tuero*, 26 M.J. 106 (C.M.A. 1988); *United States v. Bennett*, 26 M.J. 173 (C.M.A. 1988). Our sister-service court has explicitly rejected it. *United States v. Tingler*, 65 M.J. 545 (N-M. Ct. Crim. App. 2006). No other Federal circuit court of appeals has adopted it. *United States v. Washington*, 41 F.3d 917, 920 n.2 (4th Cir. 1994).

We have previously considered the applicability of *Swiderski* to courts-martial, most recently in *United States v. Esperonceda*, 36 M.J. 535 (A.F.C.M.R. 1992). Esperonceda

was convicted of distribution of controlled substances under an "aiding and abetting" theory. *Id.* at 537–38. Citing *Swiderski*, Esperonceda requested that the members be instructed that the buyer of a drug cannot be held to have aided and abetted the distribution of the drug. *Id.* at 539. In holding that the military judge did not err in denying the requested instruction, we reviewed previous military cases citing *Swiderski* and reaffirmed our prior holding that the *Swiderski*'s rationale was inapplicable to cases in which an accused "acts as the middleman or facilitator in a drug transaction, serving the interests of both the distributor and the receiver." *Id.* at 540 (quoting *United States v. Lippoldt*, 34 M.J. 523, 526 (A.F.C.M.R. 1991)).

We can resolve this assignment of error without deciding whether *Swiderski* is applicable to courts-martial.[1] Our superior court has noted the reason we give broad discretion to military judges in accepting pleas is that the facts are often undeveloped in guilty plea cases. *See United States v. Jordan*, 57 M.J. 236, 238 (C.A.A.F. 2002). Additionally,

> an accused might make a conscious choice to plead guilty in order to "limit the nature of the information that would otherwise be disclosed in an adversarial contest." As a result, in reviewing a military judge's acceptance of a plea for an abuse of discretion appellate courts apply a substantial basis test: Does the record as a whole show "'a substantial basis' in law and fact for questioning the guilty plea."

*Inabinette*, 66 M.J. at 322 (citations omitted).[2]

Before accepting Appellant's plea, the military judge discussed *Swiderski* and its potential applicability to this case several times.[3] Trial defense counsel told the military judge that he had fully discussed the case with Appellant and that he (defense counsel) considered the applicability of *Swiderski* to the facts of this case and believed that Appellant's guilty pleas were provident. Appellant was present for the discussion and also told the military judge that he still wished to plead guilty. In each of the challenged specifications, Appellant admitted taking physical possession of MDMA and, at some point thereafter, giving it to one or more people. Moreover, Appellant's admissions during

---

[1] The Government requests that we join the Navy in explicitly rejecting *Swiderski*. *United States v. Tingler*, 65 M.J. 545 (N-M. Ct. Crim. App. 2006). We need not do so given Appellant's admissions and leave for another day whether a distribution offense can occur when the recipient jointly possessed what was being distributed for the accused's and recipient's joint personal use.

[2] In fact, that appears to be exactly what happened here. Trial defense counsel had negotiated a pretrial agreement reducing the maximum approvable period of confinement from 162 years and 3 months to 16 months and dismissing several additional specifications. In waiving a potential issue relating to an unreasonable multiplication of charges, trial defense counsel noted that there were additional benefits to ensuring the pretrial agreement remained intact that he declined to disclose in open court.

[3] *Inabinette* notes that a substantial basis might exist for questioning a factually-supportable plea "where an accused knowingly admits facts that meet all the elements of an offense, but nonetheless is not advised of an available defense." *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008).

his guilty plea refuted that he jointly possessed the drugs with the persons to whom he was alleged to have distributed the drugs.

In accepting Appellant's pleas, the military judge distinguished this case from *Swiderski*:

> Unlike the situation in *U.S. v. Swiderski*, which analyzed the situation in which whether joint possessors of a controlled substance could also be found guilty of possession with intent to distribute, in this case, the accused has admitted by his statements in open court along [sic] as in the stipulation of fact to have taken sole possession of the MDMA, albeit for a brief period, before handing it to Airman [NW], [sic] this amounts to an actual transfer and meets the definition of delivery and distribution under the law as interpreted by our superior military courts.

We conclude that Appellant has failed to meet his burden to establish a "substantial basis" in law or fact to question the validity of his plea. On the three occasions when all of the people to whom Appellant ultimately distributed were not present at the time of the drug's purchase, we have no difficulty concluding that Appellant functioned as a "middleman or facilitator" in the drug transaction. On the three occasions when all of the people who had given Appellant money to purchase drugs were physically present at the time of the sale, it is undisputed that it was Appellant—and only Appellant—who was the first person in sole physical possession after the purchase and later transferred physical possession of only a portion of the drugs to others. At no point did Appellant suggest that he jointly possessed the drugs with the others. Appellant's admissions satisfy all of the elements of the offense of distribution of a controlled substance. The military judge did not abuse his discretion in accepting Appellant's pleas.

*Providing Alcohol to Minors*

In pleading guilty to providing alcohol to minors and consuming alcohol while under age, Appellant told the military judge that AFI 1-1, *Air Force Standards*, ¶ 2.7 (2012) imposed upon him a duty to comply with state drinking age laws both on and off duty. He further admitted that in Utah, where Hill Air Force Base is located, the state drinking age was 21 and state law proscribed both the provision of alcohol to, and consumption of alcohol by, minors. Finally, Appellant admitted that he was aware of the existence of the duty, that it applied to him, and that he gave alcohol to several minors and consumed it himself while under age 21.

His contention on appeal is that because the military judge failed to establish the jurisdictional status of Hill Air Force Base (i.e., whether it is an installation exclusively under federal control or there is concurrent state and federal jurisdiction), his plea is

improvident. We disagree. As noted above, it is Appellant's burden to establish a "substantial basis" for questioning his plea. The record contains Appellant's sworn admissions that the duty applied to him, a 19-page stipulation of fact in which he admitted the same, and no evidence or statement to the contrary. Even before us, Appellant does not suggest he was not bound by the duty—he simply asks us to find that the military judge should not have accepted his admission that the duty applied to him. We decline to do so and find that his pleas of guilty to these specifications were provident.

*Conspiracy to Distribute Controlled Substances*

Appellant pled guilty to conspiring with Ms. JW, a civilian, to distribute MDMA. Appellant admitted that A1C AB asked him to purchase MDMA from Ms. JW for A1C AB and his girlfriend, Ms. RM. Appellant agreed to purchase MDMA on their behalf. A1C AB gave money to Appellant. Appellant met with Ms. JW, told her that the money was from A1C AB, and asked her to purchase MDMA for A1C AB and his girlfriend. Ms. JW obtained the MDMA and then gave it to Ms. RM, both for Ms. RM's use and to give to A1C AB.

To put it more simply, A1C AB asked Appellant to serve as the middleman in a drug transaction. Appellant took money from A1C AB, contacted and met with the seller, gave the money to the seller, and ensured that the seller would make arrangements to transmit the drugs to A1C AB via A1C AB's girlfriend. Appellant now asserts that a purchaser of controlled substances cannot conspire with the dealer to distribute those same substances. We disagree.

In *United States v. Lippoldt*, 34 M.J. 523 (A.F.C.M.R. 1991), Gattis asked Lippoldt to help him obtain marijuana. Lippoldt called his brother, a marijuana user, and then drove Gattis to meet him. *Id.* at 524–25. Lippoldt's brother gave marijuana to Gattis without charge. *Id.* at 525. On those facts we upheld Lippoldt's convictions for conspiring with Gattis to possess marijuana and for distribution of the same marijuana to Gattis (as an aider and abettor of his brother). *Id.* at 525–27.

Although the instant charge is conspiracy to distribute rather than actual distribution, *Lippoldt*'s analysis remains instructive. We specifically held that "there is no question but that Lippoldt intended that his brother should provide marijuana to Gattis; that is a sufficient sharing of the brother's criminal purpose. The fact that the appellant's involvement was at the behest of Gattis is of no consequence." *Id.* at 526. Because Appellant shared Ms. JW's criminal purpose to provide MDMA to A1C AB via Ms. RM, we conclude that his plea to conspiracy to distribute MDMA to Ms. RM was provident.[4]

---

[4] Appellant argues that *United States v. Douglas*, 818 F.2d 1317 (7th Cir. 1987) supports his position. We disagree. *Douglas* was a case in which defendants who had purchased cocaine and/or heroin for their personal use requested a jury instruction that "mere proof of the existence of a buyer-seller relationship is not enough to convict one as a co-conspirator on drug conspiracy charges." *Id.* at 1318–19. As noted above, Appellant was more than a mere buyer in the transaction at issue.

*Conclusion*

The findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

LEAH M. CALAHAN
Clerk of the Court